THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SUSAN JO CAREY, Defendant-Appellant.

Second District    No. 79-633

Opinion filed March 27, 1981.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

William E. Sisler, State's Attorney, of Freeport (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Defendant was found guilty by a Stephenson County jury of conspiracy to commit murder and solicitation to commit murder. The trial court sentenced defendant to concurrent terms of six years' imprisonment on the two offenses. Defendant now appeals, alleging that the trial court committed reversible error in failing to, *sua sponte*, instruct the jury as to the object offense of murder. Alternatively, defendant argues that the trial court abused its discretion in imposing concurrent sentences of six years' imprisonment. The sufficiency of the evidence is not raised.

Briefly summarized, the evidence adduced at trial was as follows. The State's first witness, Don DeBoer, testified that he had a conversation with the defendant in the early fall of 1978 at which time she asked DeBoer if he knew of anyone who could "get rid of her husband." The defendant's alleged accomplice, Judith Meyers, subsequently asked DeBoer if she could have some mail sent to his house, which he agreed to. In January 1979, two letters were sent to the local V.F.W. commander requesting help "in finding someone that would get rid of a cop and a friend." The writer indicated a willingness to pay up to $2,000 and left a telephone number and an address where (s)he could be reached. It was later determined that the address mentioned in the letters was that of Dan DeBoer, that the phone number was listed to Judith Meyers' residence, that the letters were traceable to defendant's place of employment and that fingerprints identifiable as defendant's were on the letters.

At that point, the local police contacted the State Police and Earl Hernandez, a special agent with the Illinois Department of Law Enforcement, was brought into the case as an undercover agent. After obtaining a court order, arrangements were made to monitor conversations between Hernandez and the party whose phone number was listed in the letter.

Hernandez called the number and told the female who answered the phone that he heard from someone at the V.F.W. that she had a "job" she wanted done. The female, later identified as Judith Meyers, responded, "It wasn't for me, it is for a friend." During that and subsequent recorded conversations, it was agreed between Meyers and Hernandez that the job would be done for "the one," a police officer, for $2,500 and that Meyers and Hernandez would meet, along with Mrs. Meyers' friend who wanted the "job" done, at a local hotel later in the week.

On the day on which the meeting was to take place, defendant and Mrs. Meyers went together to a local finance company where Mrs. Meyers obtained a $700 loan, ostensibly for the purpose of fixing her car and getting a divorce. Meanwhile, preparations were being made to conduct a surveillance of the meeting, including wiring Hernandez for sound. That evening the three met as planned and conversed in a car parked in the hotel parking lot. The tape recording of the ensuing conversation indicated that Hernandez received a photograph of defendant's husband, a county sheriff's officer, from Judith Meyers and that defendant provided Hernandez with the following information: written instructions on how to get to the Carey home and to Mr. Carey's place of employment, a description of the car driven by Mr. Carey and the clothing he usually wore, as well as $700 cash. The defendant was then arrested.

The defendant testified at trial that she had agreed to go shopping with Mrs. Meyers that evening; that instead Mrs. Meyers drove to the hotel and en route indicated to defendant that she, Mrs. Meyers, planned to kill her own husband; that Mrs. Meyers told defendant that they were going to meet a friend of her brother's and that Mrs. Meyers wanted defendant to pretend she wanted to get rid of her husband; that when Mrs. Meyers' "brother's friend," who in fact was special agent Hernandez, got in the car, Mrs. Meyers constantly whispered instructions to defendant on what to say and defendant merely repeated it to this man; and, finally, that she never wanted her own husband killed, but was simply playing along for the benefit of Meyers.

■■ It is the general rule in Illinois that "[n]o party may raise on appeal the failure to give an instruction unless he shall have tendered it." (Ill. Rev. Stat. 1979, ch. 110A, par. 366(b)(2)(i); see also *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513, 515; *People v. Mumford* (1979), 70 Ill. App. 3d 395, 403, 387 N.E.2d 910, 916.) However, in criminal cases, the waiver rule does not preclude judicial review of "substantial defects" in jury instructions "if the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c); see also *People v. Roberts* (1979), 75 Ill. 2d 1, 15, 387 N.E.2d 331, 338; *People v. Underwood* (1978), 72 Ill. 2d 124, 130, 378 N.E.2d 513, 516.) Thus, "[i]t has been held error to fail to instruct the jury

on the elements of the crime [citation] or on reasonable doubt and presumption of innocence [citation] even if no such instructions are tendered." (*People v. Weeks* (1976), 37 Ill. App. 3d 41, 46, 344 N.E.2d 791, 794-95; see also *People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 688, 378 N.E.2d 348, 351.) Although the cases do not explicitly so state, it is implicit in those decisions that such instructional defects are "substantial" and, therefore, are not waived under Rule 366 (Ill. Rev. Stat. 1979, ch. 110A, par. 366). This exception to the waiver rule, however, is "a limited exception [citation], to be used to correct 'grave errors' [citation], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed [citation]." *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337; see also *People v. Ogunsola* (1980), 91 Ill. App. 3d 26, 414 N.E.2d 219, 224.

In the case at bar, defendant failed to tender an instruction on the definition of murder at the instructions conference, but now argues that such failure does not constitute a waiver since such an instruction relates to an essential element in conspiracy and solicitation to commit murder cases. The issue before the court then can be rephrased in the language used by the supreme court in *People v. Underwood*:

> "* * * whether the definitional instruction omitted was so basic to the given instruction * * * that failure of the trial court to *sua sponte* give it resulted in an unfair trial." 72 Ill. 2d 124, 130-31, 378 N.E.2d 513, 516.

In support of her argument, defendant cites *People v. Burdine* (1978), 57 Ill. App. 3d 677, 373 N.E.2d 694, and *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, as analogous cases relating to the inchoate offense of attempt. In Burdine, the court stated:

> "[W]here the crime charged is attempt, the court must not only relate the elements of attempt itself but also of the specific offense allegedly attempted." (57 Ill. App. 3d 677, 681, 373 N.E.2d 694, 698.)

In *Davis*, the court reversed the defendant's conviction for attempt robbery where the trial court failed to, *sua sponte*, instruct the jury on the definition of robbery, stating:

> "The jury was, therefore, left to its own devices in determining what 'specific offense' the court was referring to in its definition of attempt, as well as in determining whether defendant had taken a 'substantial step' toward its commission. Such a verdict cannot be permitted to stand." (74 Ill. App. 2d 450, 453, 221 N.E.2d 63.)

From *Burdine* and *Davis*, defendant would have us conclude that the jury must be instructed on the object offense for all inchoate offenses.

The State, on the other hand, argues first of all that even in attempt

cases, the law is not clear regarding whether the jury must be instructed on the object offense. For example, in *People v. Lewis* (1979), 71 Ill. App. 3d 214, 389 N.E.2d 665, the defendant, who was convicted of attempt murder, argued that the interests of justice required the court to find error in the trial court's failure, *sua sponte*, to instruct the jury as to the definition of murder. The court rejected defendant's argument and held that since there was no plain error, the issue was waived by the defendant's failure to tender such an instruction.

The State further argues that, even assuming that in attempt cases the jury must be instructed on the definition of the object offense, this rule would not necessarily be required for solicitation and conspiracy cases. This argument finds support in *People v. Ambrose* (1975), 28 Ill. App. 3d 627, 329 N.E.2d 11, where the court upheld the defendant's conviction for conspiracy to commit armed robbery despite the failure of the trial judge to, *sua sponte*, instruct the jury on the object offense of armed robbery. In so ruling, the court specifically distinguished *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, a case cited by defendant herein, stating:

> "The *Davis* case reasoning is that since it is necessary to prove the completion of an act which is a substantial step toward the completion of the object offense to prove an attempt, the trial court on its own should have given the applicable instruction on all the elements of the object offense of robbery. We are asked by analogy to the *Davis* case to hold that the object offense in the crime of conspiracy is a necessary element of the crime which must be fully explained to the jury. * * *
>
> The gist of the offense of conspiracy is the agreement to commit the object offense rather than the object offense itself. It is not necessary to prove an act in furtherance of the actual object offense for conspiracy as it would be for attempt. A reading of section 8—2 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 8—2) indicates that only an act in furtherance of the agreement is necessary for conspiracy. This distinction from *People v. Davis* controls the outcome of this case." 28 Ill. App. 3d 627, 632-33, 329 N.E.2d 11, 16-17.

This court has never had the opportunity to decide whether definitional instructions on the object offense are required where the crime charged is an inchoate offense, whether that offense be solicitation, attempt or conspiracy. The first and fifth districts appear to be at odds on the question in attempt cases (compare, *e.g.*, *People v. Burdine* (1978), 57 Ill. App. 3d 677, 373 N.E.2d 694, and *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, with *People v. Lewis* (1979), 71 Ill. App. 3d 214, 389 N.E.2d 665), while the third district stands alone regarding instructions in the conspiracy context (see *People v. Ambrose* (1975), 28 Ill. App.

3d 627, 329 N.E.2d 11). The Illinois Supreme Court has never ruled explicitly on the question involved herein. However, in two cases, the court refers to the issue at hand.

In *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, the defendant raised as error the giving of an instruction defining murder in a prosecution for attempt murder. The court found no error in giving the instruction, stating:

> "[I]t would seem utterly meaningless to instruct a jury on attempt to commit a 'specific offense' without defining the specific offense alleged to have been committed. Such procedure would leave the jury entirely to its own devices in determining what specific offense the court was referring to in its definition of attempt as well as in determining whether the defendant had taken a substantial step toward its commission." (45 Ill. 2d 573, 579, 262 N.E.2d 446, 449-50.)

The court did not, however, hold that it would be error for the trial court to fail to give the definitional instruction *sua sponte*; the court merely said that it was not error to give the instruction.

More recently in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the Illinois Supreme Court referred to the definitional murder instruction in an attempt murder case as "the *nonmandatory* definitional instruction." (Emphasis added.) (75 Ill. 2d 1, 14, 387 N.E.2d 331, 337.) We find this language to be significant and in accordance with our view of the proper resolution of the question before us. We, therefore, hold that the trial court did not err in failing to instruct the jury, *sua sponte,* on the legal definition of murder where the offenses charged were conspiracy and solicitation to commit murder.

Although we do not under the facts of the case before us decide whether a definitional instruction is required in attempt cases, even assuming that the approach taken in *People v. Burdine* (1978), 57 Ill. App. 3d 677, 373 N.E.2d 694, and *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, is the proper one and such instructions are required, such a result would not deter us from reaching the conclusion that we do in the solicitation and conspiracy context. There is a fundamental difference between the crime of attempt and the crimes of solicitation and conspiracy. The statutory offense of attempt contains an element not present in solicitation or conspiracy, that there be "a substantial step toward the commission of" a specific offense. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4.) In order for the jury to determine if the crime of attempt has been committed, it could logically be said that they would need to be informed of the various elements of the crime allegedly attempted to decide if there has been a "substantial step toward the commission" of that offense. The requirement of a substantial step toward completion is not, however, an

element of either solicitation (Ill. Rev. Stat. 1979, ch. 38, par. 8—1) or conspiracy (Ill. Rev. Stat. 1979, ch. 38, par. 8—2).

■■ We conclude that the definitional instruction omitted was not so basic to the given instructions on solicitation and conspiracy that under the facts of this case the failure of the trial court to *sua sponte* give it resulted in an unfair trial. Furthermore, this is not one of those cases which can be said to be close factually. In fact, the evidence of defendant's guilt is overwhelming.

While we would certainly find a substantial defect invoking the exception to the waiver rule set out in Supreme Court Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)) if the trial court failed to *sua sponte* instruct the jury on an essential element of the offense charged, such is not the case here. As the court recognized in *People v. Ambrose*:

> "If the offense which was the object of the conspiracy were some technical or unusually complex offense of which the trier of fact has no general impression, a suitable instruction explaining such an offense would be mandatory. This is not such a case." (28 Ill. App. 3d 627, 633, 329 N.E.2d 11, 17.)

While although the giving of a definitional instruction on murder in a conspiracy or solicitation to commit murder case could not be assigned as error (see *People v. Ambrose* (1975), 28 Ill. App. 3d 627, 633, 329 N.E.2d 11, 17), the failure of the trial court here to give such an instruction *sua sponte* does not constitute a substantial defect invoking the "limited exception to the waiver rule." *People v. Underwood* (1978), 72 Ill. 2d 124, 131, 378 N.E.2d 513, 516.

■■■ Defendant next argues that since she had no prior criminal convictions, and since her incarceration was not necessary for the protection of the public, the sentence imposed, two 6-year terms to be served concurrently, was an abuse of the trial court's discretion. Defendant requests this court to reduce the sentence imposed by the trial court to "a more reasonable length of imprisonment." While this court has the authority to reduce the punishment imposed by the trial court (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)), the sentence imposed is a matter of sound judicial discretion and, absent an abuse of that discretion, should not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The trial judge is usually in a better position than a reviewing court to make the determination as to the appropriate punishment to be imposed and, therefore, the trial judge's decisions in this regard are entitled to great deference and weight. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■■ It is difficult to find an abuse of discretion here, where the trial court imposed concurrent six-year sentences on convictions for conspiracy and solicitation to commit murder, offenses of a very serious nature. A

638

conviction for conspiracy to commit murder carries a maximum sentence of seven years (Ill. Rev. Stat. 1979, ch. 38, pars. 8—2(c), 1005—8—1(a)(5)), while a conviction for solicitation to commit murder carries a maximum sentence of 30 years (Ill. Rev. Stat. 1979, ch. 38, pars. 8—1, 8—4(c), 1005—8—1(a)(3)). The sentence imposed by the trial court cannot be deemed an abuse of discretion considering the seriousness of the offenses, the maximum terms of imprisonment permissible for such convictions and where the trial court record shows that the trial judge seriously considered appropriate factors in aggravation and mitigation.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.