THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIFFANY HOPP, Defendant-Appellant.

Third District    No. 3—01—0778

Opinion filed December 11, 2002.

HOLDRIDGE, J., specially concurring in part and dissenting in part.

Michael B. Metnick and Diana N. Cherry (argued), both of Metnick, Cherry & Frazier, of Springfield, for appellant.

Karen Andrews, State's Attorney, of Carthage (John X. Breslin and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McDADE delivered the opinion of the court:

Following a jury trial on charges of conspiracy to commit first degree murder, attempted murder, and home invasion, Tiffany Hopp was found guilty of conspiracy. On appeal, the defendant argues that the jury was improperly instructed with regard to the conspiracy charge and that the trial court erred by refusing to submit a nonpattern instruction to the jury. We affirm in part and reverse and remand in part.

## FACTS

In the early morning of December 20, 2000, Josh Sparrow struck James Hopp on the head with a fireplace poker while he lay asleep on his couch. The blow woke Mr. Hopp, and he called the police as his attacker fled. On their way home, Josh and his accomplice, Matthew Horton, were stopped for being out after curfew by a police officer responding to Hopp's call. When the officer arrived at the Hopp residence with Josh and Matt in his cruiser, Hopp identified Sparrow as his attacker.

The assault on Hopp was the culmination of a plan developed by Josh Sparrow and his friend Matt Horton. At the time, Josh was the 16-year-old boyfriend of Tiffany Hopp, the defendant, who was James Hopp's 27-year-old estranged wife. Matt was Josh's best friend.

Matthew Horton testified on behalf of the State, in exchange for being charged as a juvenile. He stated at trial that in the two months leading up to the attack, he, Josh, and Tiffany had discussed ways to kill James Hopp. Josh Sparrow, also testifying in exchange for a juvenile adjudication, stated that the three had engaged in approximately 30 to 40 discussions about killing James.

Both Matt and Josh testified that Tiffany promised Matt a car if he would help with the murder and that she told them that she might be the beneficiary of James's life insurance policy. Josh testified that the conspirators decided that Tiffany's children, who were in James's

custody, should not be home for the murder, so the date for the attack was set for a weekend when Tiffany was to take her children to visit their grandmother in California.

After her arrest, Tiffany made a videotaped statement to the police. The tape was played to the jury during the presentation of the State's case. In it, Tiffany claimed that she knew about Josh and Matt's plans to kill her husband but that she never agreed to them. Rather, she claimed that she tried to discourage them by pointing out flaws in their various schemes. She also stated in the videotaped statement that she was afraid that if she told Josh not to kill her husband, he would leave her.

The defendant was acquitted on counts of attempt to commit first degree murder and home invasion, but she was found guilty of conspiracy to commit first degree murder. She was then sentenced to a term of seven years in prison. She now appeals on two grounds. First, she contends that the trial court committed plain error when it did not, *sua sponte*, give the jury an instruction on the definition of first degree murder. Second, she claims the trial court erred when it refused to submit an additional nonpattern instruction relating to the crime of conspiracy.

## ANALYSIS

### A. The Failure to Submit Jury Instruction on the Definition of First Degree Murder

Appellant argues that it was error for the trial court not to submit an instruction on the definition of first degree murder when it instructed the jury on the definition of conspiracy to commit first degree murder. Specifically, appellant complains that the jury was not instructed that it was required to find that she possessed the specific intent to kill her husband before it could find her guilty of conspiracy to commit first degree murder. The trial court's failure to submit a jury instruction that was not tendered by the objecting party should be reviewed for plain error. 177 Ill. 2d R. 451(c); *People v. Huckstead,* 91 Ill. 2d 536, 543-44, 440 N.E.2d 1248, 1251 (1982).

■ Ordinarily, a party waives the right to appeal the failure of the court to tender an instruction if the party did not submit the instruction itself. 155 Ill. 2d R. 366 (b)(1)(i); *People v. Huckstead,* 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251 (1982). However, an exception to this rule exists in cases where the failure creates a substantial defect and the interests of justice require review. 177 Ill. 2d R. 451(c). Review under the exception is appropriate when the failure to instruct creates an error of such magnitude that it deprives the defendant of a substantial right or where the evidence is so closely balanced that

fundamental fairness requires that the jury be properly instructed. *People v. Hernandez*, 267 Ill. App. 3d 429, 436, 644 N.E.2d 769, 775 (1994). The waiver exception is " 'applicable only to serious errors which severely threaten the fundamental fairness of the defendant's trial.' " *Huckstead*, 91 Ill. 2d at 547, 440 N.E.2d at 1253, quoting *People v. Roberts*, 75 Ill. 2d 1, 15 (1979).

As support for her argument that it was error to refuse the instruction, appellant cites the committee note to Illinois Pattern Jury Instructions, Criminal, No. 6.03 (4th ed. 2000) (hereinafter IPI Criminal 4th), and *People v. Trinkle*, 68 Ill. 2d 198, 369 N.E.2d 888 (1977), and *People v. Harris*, 72 Ill. 2d 16, 337 N.E.2d 28 (1978), two cases that discuss the need for instructions defining the object offense in cases of attempt.

There are two instructions that were required on the conspiracy charge—IPI Criminal 4th Nos. 6.03 and 6.04. The committee note to IPI Criminal 4th No. 6.03 states:

> "The court *must* also give an instruction that defines the offense that is the alleged subject of the conspiracy. For example, if a defendant is charged with conspiracy to commit first degree murder, Instruction 7.01A [now 7.01] defining first degree murder would be given following this instruction, but Instruction 7.02A listing the issues in a first degree murder prosecution would not be given unless the defendant was also charged with the substantive offense of first degree murder." (Emphasis added.)

■ The dissent downplays the significance of the committee notes, but they carry substantial weight. The instructions and the notes are prepared by a committee appointed by the supreme court and to which one supreme court justice serves as liaison. When the instructions and notes are approved, courts are directed by Supreme Court Rule 451 (177 Ill. 2d R. 451) to use the IPI criminal instructions when the facts of the case so warrant. The User's Guide to IPI Criminal states: "If a Committee Note indicates to give another instruction, *that is a mandatory requirement.*" (Emphasis added.) IPI Criminal 4th, Committee Note, at viii.

■ IPI Criminal 4th No. 6.03 (conspiracy) mandates giving an instruction that defines the offense that is the subject of the conspiracy—in this case IPI Criminal 4th No. 7.01. That instruction, in pertinent part, defines the offense of first degree murder as follows:

> "A person commits the offense of first degree murder when he kills an individual [without lawful justification] if, in performing the acts which cause the death,
>
> [1] he intends to kill or do great bodily harm to that individual [or another];

[or]

[2] he knows that such acts will cause death to that individual [or another];

[or]

[3] he knows that such acts create a strong probability of death or great bodily harm to that individual [or another];

[or]

[4] he [(is attempting to commit) (is committing)] the offense of _____." IPI Criminal 4th No. 7.01.

The accompanying committee note provides the following directive:

"When the prosecution is for an inchoate offense (i.e., attempt first degree murder, solicitation to commit first degree murder, *conspiracy to commit first degree murder*), do not give paragraphs [2], [3], or [4]. In addition, modify the murder definition in paragraph [1] *in attempt first degree murder cases* to require that the defendant had the intent to kill another. *See People v. Harris*, 72 Ill. 2d 16, 377 N.E.2d 28, 17 Ill. Dec. 838 (1978)." (Emphasis added.) IPI Criminal 4th No. 7.01, Committee Note.

This analysis appears to undermine any argument that it is sufficient to simply advise the jury that it must find that defendant had the intent to commit the crime of first degree murder.

Turning to the cases, we have already acknowledged that the two cases cited by defendant involve charges of "attempt," rather than "conspiracy." We also recognize that both of those cases dealt with erroneous definitional instructions given to the jury and here we consider a case where no definitional instruction, right or wrong, was given.

*Harris* involved a defendant who, during an argument with his girlfriend, fired a gun at her car as she drove away. He was charged with attempt to commit first degree murder. Along with an instruction on the definition of attempt, the court submitted an instruction on the definition of first degree murder, which described the mental state required for culpability. The jury was instructed that " '[a] person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual.' " *Harris*, 72 Ill. 2d at 20, 337 N.E.2d at 30. The defendant objected to the instruction, since it told the jury that he could be found guilty of attempted murder even if he had acted only with the intent to cause "great bodily harm." The court found that giving the instruction was reversible error.

In *Trinkle*, the defendant drank 20 to 30 glasses of beer at a tavern and, after being refused further service, left to purchase a handgun. He then returned and fired it into the bar, wounding a customer. On appeal from the defendant's attempted murder conviction, the court

found that including instructions on the lesser mental states of first degree murder was plain error, reasoning that "[i]t is not sufficient that the defendant [acted] 'knowing such act created a strong probability of death or great bodily harm ***.' If this were the test, then a defendant who committed a battery with knowledge that such conduct could cause great bodily harm would be guilty of attempted murder. But, in law, he would be guilty of aggravated battery, a completely different offense with a different penalty." *Trinkle*, 68 Ill. 2d at 201, 369 N.E.2d at 890.

In *Trinkle* and *Harris*, the court was concerned that the jury would find the defendant guilty of attempted murder, even if he lacked the intent to kill. As the *Trinkle* court pointed out, the charge of attempted murder could only be sustained if the defendant intended by his acts to kill the victim. *Trinkle*, 68 Ill. 2d at 203, 369 N.E.2d at 891.

The dissent cites *People v. Carey*, 94 Ill. App. 3d 631, 418 N.E.2d 1119 (1981), as a case clearly "on point." 336 Ill. App. 3d at 533. Even though *Carey* deals with conspiracy (as we do) rather than attempt, we believe it is inapposite for three reasons. First, it was decided in 1981—10 years before the legislature abolished the crime of murder and enacted the offense of first degree murder. We believe the significance of that fact is the creation of real doubt that everyone knows what first degree murder is.

Moreover, first degree murder, as designed by the legislature, can be accomplished with four different mental states. 720 ILCS 5/9—1 (West 1994). These are set out in IPI Criminal 4th No. 7.01, quoted above. The jury needs to be instructed on which form of murder the defendant is charged with conspiring to do in order to determine whether she intended to commit that particular offense.

Second, the *Carey* court found "significant" support for its decision in the supreme court's reference to "the definitional murder instruction in an attempt murder case as 'the nonmandatory definitional instruction.' " (Emphasis omitted.) *Carey*, 94 Ill. App. 3d at 636, 418 N.E.2d at 1122, quoting *People v. Roberts*, 75 Ill. 2d 1, 387 N.E.2d 331 (1979). As we have previously discussed, the definitional instruction is no longer "nonmandatory."

Third, the *Carey* court relied on *People v. Koshiol*, 45 Ill. 2d 573, 262 N.E.2d 446 (1970), another "attempt" case. Defendant in that case claimed error in the giving of a definitional instruction of murder at all. In finding no error, the court said:

> " '[I]t would seem utterly meaningless to instruct a jury on attempt to commit a "specific offense" without defining the specific offense alleged to have been committed. Such procedure would leave the jury entirely to its own devices *in determining what*

*specific offense the court was referring to in its definition of attempt as well as* in determining whether the defendant had taken a substantial step toward its commission.' (45 Ill. 2d 573, 579, 262 N.E.2d 466 [*sic*], 449-50.)" (Emphasis added.) *Carey*, 94 Ill. App. 3d at 636, 418 N.E.2d at 1122.

The supreme court gave two reasons for defining the "specific offense." The *Carey* court focused on only one—as does the dissent here—and gave short shrift to the other.

It is true, as *Carey* held and as the dissent argues, that the "substantial step toward the commission of the offense" and the "act in furtherance of the conspiracy" require different showings of intent. The difference is reflected in the last sentence of the committee note to IPI Criminal 4th No. 7.01, which requires the modification of paragraph [1] to limit the intent only to that to kill. That fact, however, is not dispositive of the issue here because, as *Koshiol* shows and the committee note reflects, the jury should not be left "entirely to its own devices" in determining what "specific offense" is the object of the inchoate offense. The offense of conspiracy requires that the defendant have the intent that the object offense be committed, but the jury cannot accurately determine whether the defendant had that intent unless it is given the definition of the offense.

It is for these reasons that we believe *Carey* to be inapposite and we choose not to follow it.

•4 We do not agree with defendant's rationale for her claim of error on this issue because neither the committee notes nor the cases that she has cited support the need to find a specific intent to kill in order to convict on a charge of conspiracy. We do, however, find that it is a substantial and prejudicial defect in the trial and, therefore, reversible error to fail to give the mandatory definitional murder instruction in a case alleging conspiracy to commit first degree murder. As we have previously indicated, it is the responsibility of the parties to submit the necessary instructions, but we hold that in the case of a mandatory instruction, the trial court should submit it *sua sponte* if the parties fail in that responsibility. Not to do so is, we believe, plain error.

## B. The Trial Court's Refusal to Submit a Nonpattern Jury Instruction on Conspiracy

■ At trial, the defendant proposed a jury instruction that stated "mere knowledge of, acquiescence in, approval of, or evidence of a relationship or transaction between the parties does not constitute a conspiracy." The instruction was requested as support for defendant's defense that although she was aware of Josh and Matthew's plans to kill her estranged husband, she never agreed that the act should be

committed. The trial court refused to give the instruction and defendant claims this was reversible error.

A defendant in a criminal case is entitled to tender jury instructions that state the law that applies to her theory of the case. *People v. Gilliam*, 172 Ill. 2d 484, 519, 670 N.E.2d 606, 622 (1996). If there is an applicable IPI instruction, it must be used. *Gilliam*, 172 Ill. 2d at 519, 670 N.E.2d at 622. The decision on whether to submit a nonpattern instruction is within the sound discretion of the trial court. *Gilliam*, 172 Ill. 2d at 519, 670 N.E.2d at 622. When the essence of the nonpattern instruction is covered by IPI instructions that are given, the court's refusal to give a nonpattern instruction is not an abuse of discretion. *Gilliam*, 172 Ill. 2d at 519, 670 N.E.2d at 622.

Here, the essence of defendant's proposed instruction is covered by the IPI instructions that were given. The jury was instructed that it could only find the defendant guilty of conspiracy if it also found that she had entered into an agreement with the other alleged conspirators to commit the offense. Since the existence of an agreement is an element of conspiracy, the jury is already required to find more than mere knowledge of the plot. Despite defendant's assertion to the contrary, an ordinary lay member of the jury understands that "to agree" to something entails more than mere knowledge or even acquiescence. Furthermore, the case from which the language of the proposed instruction was taken, *People v. Perruquet*, 173 Ill. App. 3d 1054, 527 N.E.2d 1334 (1988), involved a situation where there was no independent evidence of an agreement to commit the object offense. In this case, there is substantial independent evidence that the defendant agreed to the commission of the offense.

The standard for our review of this issue is not whether another judge or another court would have given the requested instruction but whether the decision of the trial court in this case not to give it was an abuse of discretion. Since it does not appear that the defendant was prejudiced, we find that it was not an abuse of discretion for the trial court to refuse to instruct the jury as requested.

## CONCLUSION

The failure of the trial court to submit the mandatory definitional instruction (IPI Criminal 4th No. 7.01) to be given with IPI Criminal 4th No. 6.03 on conspiracy was plain error. However, for the reasons set out above, we do not find the refusal of the trial court to submit to the jury an additional, nonpattern, instruction on the crime of conspiracy to be an abuse of discretion. The essence of the proposed instruction was already addressed in IPI instructions that were submitted to the jury.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this order.

Affirmed in part and reversed and remanded in part.

SLATER, J., concurs.

JUSTICE HOLDRIDGE, specially concurring in part and dissenting in part:

I agree with the majority's conclusion that the trial judge did not commit reversible error in refusing Hopp's non-IPI conspiracy instruction.

However, I disagree with the majority's conclusion that the judge committed reversible error in failing to *sua sponte* instruct the jury that conspiracy to commit murder requires intent to kill. Such intent is an element of first degree murder (the object offense), not conspiracy (the charged offense). The significance of this distinction was explained in *People v. Ambrose*, 28 Ill. App. 3d 627 (1975), a case involving conspiracy to commit armed robbery:

> "The gist of the offense of conspiracy is the agreement to commit the object offense rather than the object offense itself. It is not necessary to prove an act in furtherance of the actual object offense for conspiracy as it would be for attempt. *** [O]nly an act in furtherance of the agreement is necessary for conspiracy. This distinction *** controls the outcome of this case. The jury as ordinary laymen have a general knowledge of what constitutes armed robbery which is self-defining. If the offense which was the object of the conspiracy were some technical or unusually complex offense of which the trier of fact has no general impression, a suitable instruction explaining such an offense would be mandatory. This is not such a case." *Ambrose*, 28 Ill. App. 3d at 633.

Neither is the instant case such a case. The judge clearly and repeatedly instructed the jury that a guilty verdict on the conspiracy count required a finding that Hopp acted "with the intent that the offense of First Degree Murder be committed." Every layperson knows that first degree murder requires a killing. Thus, the jury was clearly informed that it could not find Hopp guilty on the conspiracy count without first finding that she acted with intent to kill her estranged husband. The majority's contrary assertion is unbelievable.

The cases the majority cites to support its conclusion (*People v. Trinkle*, 68 Ill. 2d 198 (1977), and *People v. Harris*, 72 Ill. 2d 16 (1978)) dealt with the offense of attempt, not conspiracy. Those cases are thus

distinguishable from the instant case. See *Ambrose*, 28 Ill. App. 3d 627.

The only other authority the majority musters is the committee notes to IPI Criminal 4th Nos. 6.03 and 7.01. Although those notes call for an instruction on the intentional killing aspect of first degree murder in a conspiracy case, they do not resolve the instant issue— whether the absence of such an instruction rises to the level of reversibility. Hopp's failure to assert the instant issue below constitutes a waiver of her claim on appeal. See *People v. Huckstead*, 91 Ill. 2d 536 (1982). The majority circumvents this well-established rule by invoking the plain error doctrine as an exception. But that doctrine only applies where a substantial defect at trial threatens the interests of justice. *Huckstead*, 91 Ill. 2d 536. No such defect occurred at Hopp's trial because, considering the instructions the jury received, any layperson would have known what she claims was missing. I find it curious that the majority supports Part B of its analysis with lay knowledge (the meaning of the phrase "to agree") but ignores such knowledge in Part A.

In *People v. Carey*, 94 Ill. App. 3d 631 (1981), the defendant was convicted on a charge of conspiracy to commit murder. She appealed her conviction using the same argument Hopp now uses: "that the [judge] committed reversible error in failing to, *sua sponte*, instruct the jury as to the object offense of murder." *Carey*, 94 Ill. App. 3d at 632. The court, noting the obvious distinction between conspiracy and attempt, found no reversible error. Specifically, the court observed: "the failure of the [judge] to give such an instruction *sua sponte* does not constitute a substantial defect invoking the 'limited exception to the waiver rule.' " *Carey*, 94 Ill. App. 3d at 637, quoting *People v. Underwood*, 72 Ill. 2d 124, 131 (1978).

The majority deprecates *Carey* based on (1) the legislature's subsequent abolishment of the murder statute and enactment of a first degree murder statute, (2) the *Carey* court's reference to the definitional murder instruction as nonmandatory, and (3) an assertion that without the instruction the jury would be left alone to determine the object offense. These points do not provide meaningful distinction.

First, the change from "murder" to "first degree murder" does not obscure the patently obvious fact that a killing is still required. Furthermore, the majority's reliance on the committee note to IPI Criminal 4th No. 7.01 contradicts its claim that "[t]he jury needs to be instructed on which form of murder the defendant is charged with conspiring to do." 336 Ill. App. 3d at 528. In the note's prescribed instruction, all forms other than intentional first degree murder are excluded. Second, despite the "nonmandatory" language in *Carey*, the

court said, "even assuming that *** [definitional] instructions are required, such a result would not deter us from reaching the conclusion that we do in the solicitation and conspiracy context." *Carey*, 94 Ill. App. 3d at 636. Third, the jury had no need to "determine" the object offense (first degree murder). As the note to IPI Criminal 4th No. 7.01 illustrates, the only pertinent element of first degree murder in the instant case was intent to kill. Based on the instructions the judge gave, the jury knew it had to find such intent before returning a guilty verdict. *Carey* is on point.

For the foregoing reasons, I respectfully dissent from the portion of the majority's order reversing the trial court's judgment.