(No. 95574.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TIFFANY HOPP, Appellee.

*Opinion filed February 20, 2004.*

Lisa Madigan, Attorney General, of Springfield, and
Karen Andrews, State's Attorney, of Carthage (Gary
Feinerman, Solicitor General, Linda D. Woloshin and
Domenica A. Osterberger, Assistant Attorneys General,
of Chicago, and Norbert J. Goetten, John X. Breslin and
Judith Z. Kelly, of the Office of the State's Attorneys
Appellate Prosecutor, of Ottawa, of counsel), for the
People.

Diane N. Cherry and Michael B. Metnick, of Metnick,
Cherry & Frazier, of Springfield, for appellee.

4

JUSTICE GARMAN delivered the opinion of the court:

Defendant, Tiffany Hopp, was found guilty by a jury of conspiracy to commit first degree murder. The appellate court reversed her conviction on the ground that the trial court committed plain error when it failed to give *sua sponte* a required jury instruction defining first degree murder. 336 Ill. App. 3d 523. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315. We now reverse and affirm defendant's conviction.

## BACKGROUND

In the early morning of December 20, 2000, 16-year-old J.S. entered the home of James Hopp in Nauvoo and hit James on the head with a fireplace poker while he slept. James was seriously injured by the blow but has since recovered. J.S. and another juvenile, M.H., were arrested near the Hopp residence by a police officer who was responding to the scene. At the time of the attack, defendant Tiffany Hopp, James' estranged wife, was in California with the couple's four children, visiting Tiffany's mother. After defendant returned from California, she went to the Hancock County sheriff's department to be interviewed about the attack on her husband. She gave two statements regarding her involvement in the attack, the second of which was videotaped. She was then arrested and later charged by information with conspiracy to commit first degree murder, and with attempted first degree murder and home invasion on a theory of accountability for the actions of J.S. and M.H.

J.S. and M.H. testified against defendant at trial. Both testified that J.S. was defendant's boyfriend. J.S. was 16 years old at the time of the attack on James, while defendant was 26. Both J.S. and M.H. testified about numerous conversations they had with defendant in the weeks prior to the attack. During those conversations the three discussed various plans to kill James, including

using a shotgun, burning down the house, and cutting James' throat. Defendant criticized these plans. For example, she opined that a shotgun would make too much noise. The trio also discussed fabricating alibis by, for example, going to a movie theater in another town, obtaining tickets, and then slipping out of the theater to go to Nauvoo and kill James.

J.S. testified that "[w]e finalized the plan" shortly before defendant and the children left for California. The final plan was for J.S. and M.H. to go to the Hopp house early in the morning during the weekend. J.S. testified that it was decided to use the poker at his suggestion, and that he had the idea because he "saw it on TV a lot." M.H. testified that his role was to accompany J.S. to make sure he would go through with it. Both testified that M.H. was to receive a car for his involvement while defendant would get custody of the four children, the house, and possibly proceeds from insurance on James' life.

The State played defendant's videotaped statement for the jury. In it she maintained that she discussed killing James with J.S. and M.H. only so she could talk the boys out of it by pointing out flaws in their plans. She also claimed she was afraid J.S. would leave her if she told him not to kill James. Defendant also introduced a letter that J.S. wrote to James after the attack in which J.S. stated that defendant "didn't plan anything, she didn't talk me into anything, if anyone deserves her charges it's [M.H.]."

A police officer who was present when defendant gave both statements testified that defendant was generally more "accountable" in the untaped statement. The officer testified that in the untaped statement defendant admitted that when she sent a message to J.S. via the internet stating that he had one more day, she meant that he had one more day left in which to kill James. In the

taped statement she claimed that she meant J.S. had one more day to be without her, but admitted she did not correct him when she realized he understood it to mean that he had one more day to kill James. A second officer testified that while he was transporting defendant to court the day after her arrest she asked him why she was charged with solicitation to commit murder. Before he could answer, defendant stated, "We committed a conspiracy to kill [James] but we didn't do a solicitation to kill [James]." J.S. testified that when he wrote to James that defendant did not plan anything, the statement was not accurate. J.S. testified further that defendant did not come up with any of the ideas about how to kill James.

The jury was instructed on the elements of conspiracy and the other two charged crimes. However, neither party tendered a jury instruction defining first degree murder, the object offense of the conspiracy, and no such instruction was given. The failure to instruct was not raised in a posttrial motion. The jury found defendant guilty of conspiracy to commit first degree murder and not guilty of attempted first degree murder and home invasion. The court later sentenced defendant to seven years in the Department of Corrections.

## ANALYSIS

Defendant did not tender a jury instruction defining first degree murder, nor did she assert in her posttrial motion that it was error to omit the instruction. On appeal, defendant argued that the court erroneously failed to give a nonpattern jury instruction she had tendered and that the court committed plain error when it failed to give an instruction defining first degree murder *sua sponte*. The appellate court held that the court did not err in refusing the nonpattern jury instruction but reversed defendant's conviction, over a dissent, on the ground that the failure to instruct the jury on the defini-

tion of first degree murder for purposes of the conspiracy count was plain error. The sole issue before us is whether that failure to instruct on the definition of first degree murder was plain error.

Supreme Court Rule 451(a) requires that in a criminal case, if the court determines the jury should be instructed on a subject, and the Illinois Pattern Jury Instruction (IPI), Criminal, contains an applicable instruction, then the IPI instruction "shall" be given unless the court determines it does not accurately state the law. 177 Ill. 2d R. 451(a); *People v. Novak*, 163 Ill. 2d 93, 116 (1994). The court in this case gave the IPI instructions for a charge of conspiracy other than certain drug conspiracies. See Illinois Pattern Jury Instructions, Criminal, Nos. 6.03, 6.04 (4th ed. 2000) (hereinafter IPI Criminal 4th). The committee note to Instruction 6.03 states that the court "must" also give an instruction defining the offense that is the alleged subject of the conspiracy. IPI Criminal 4th No. 6.03, Committee Note. The user's guide to IPI Criminal 4th states, "If a Committee Note indicates to give another instruction, that is a mandatory requirement." IPI Criminal 4th, User's Guide, at VIII. Thus it was error for the court to fail to give the IPI instruction defining first degree murder.

Supreme Court Rule 366 provides that a party that fails to tender a jury instruction may not raise the failure to give the instruction on appeal. 155 Ill. 2d R. 366(b)(2)(i). However, Rule 451(c) provides that "substantial defects [in jury instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." 177 Ill. 2d R. 451(c).

Rule 451(c)'s exception to the waiver rule for substantial defects applies when there is a grave error or when the case is so factually close that fundamental fairness requires that the jury be properly instructed. *People v. Thurman*, 104 Ill. 2d 326, 329-30 (1984); *People v. Huck-*

8

*stead*, 91 Ill. 2d 536, 544 (1982). The tests for application of Rule 451(c)'s exception to the waiver rule are "strict tests" that "demonstrate that the exception to the waiver rule is limited and is applicable only to serious errors which severely threaten the fundamental fairness of the defendant's trial." *People v. Roberts*, 75 Ill. 2d 1, 15 (1979). The function of jury instructions is to convey to the jurors the law that applies to the facts so they can reach a correct conclusion. *People v. Fuller*, 205 Ill. 2d 308, 343 (2002). Thus, the erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial. In *People v. Ogunsola*, we reversed defendant's conviction because an omitted jury instruction "removed from the jury's consideration a disputed issue essential to the determination of defendant's guilt or innocence." *People v. Ogunsola*, 87 Ill. 2d 216, 223 (1981). The defendant in *Ogunsola* was charged with deceptive practices. The jury was given an IPI instruction that it should find the defendant guilty if the State proved beyond a reasonable doubt that the defendant wrote a check with the intent to pay the victim while knowing the check would not be paid. The jury should have been instructed that it also had to find the defendant intended to defraud the victim, because intent to defraud is an element of the offense of deceptive practices. We reasoned that intent to defraud is an essential element because it is possible to possess the element of knowledge the check will not be paid, on which the jury was instructed, without possessing intent to defraud. *Ogunsola*, 87 Ill. 2d at 221. Because the principal contested issue relevant to defendant's culpability was whether he intended to defraud, we held that "fundamental fairness required that the jury be instructed" it had to find intent to defraud. *Ogunsola*, 87 Ill. 2d at 223.

By contrast, in *People v. Underwood*, we held that it was not plain error for the court to fail to give an IPI instruction on the definition of "reasonable belief." *People v. Underwood*, 72 Ill. 2d 124, 131 (1978). The parties in *Underwood* agreed that the essential issue bearing on the defendant's guilt was whether he justifiably acted in self-defense when he stabbed the victim. The court instructed the jury that a person is justified in the use of force if he "reasonably believes" his conduct is necessary to defend himself. The defendant failed to tender the IPI instruction that "reasonably believes" means "the person concerned, acting as a reasonable man, believes" and the instruction was not given. We reasoned that, while it would have been plain error to fail to instruct the jury on self-defense, the definitional instruction was not "so basic to the given instruction on self-defense" that it was plain error for the court to fail to give it *sua sponte. Underwood*, 72 Ill. 2d at 130.

Before addressing the defendant's argument that the omission in her case was plain error, we must address the opinion of the appellate court. As will be explained below, defendant argues that a conviction for conspiracy to commit first degree murder requires intent that the victim be killed. The appellate court expressly rejected this premise, but reversed on other grounds. 336 Ill. App. 3d at 529. If the appellate court's grounds were sufficient to reverse defendant's conviction, we would affirm its judgment without reaching defendant's argument. However, for the following reasons we find the appellate court's grounds insufficient.

The appellate court declined to follow *People v. Carey*, rejecting the dissent's suggestion that *Carey* is on point. 336 Ill. App. 3d at 528, citing *People v. Carey*, 94 Ill. App. 3d 631 (1981). In *Carey*, defendant was convicted of conspiracy to commit murder and solicitation to commit murder. She failed to tender an instruction defining

murder, but argued on appeal that the failure to give such an instruction was plain error. The *Carey* court applied *Underwood*. *Carey*, 94 Ill. App. 3d at 634, citing *Underwood*, 72 Ill. 2d at 124, 130-31. It found no plain error because "the definitional instruction omitted was not so basic to the given instructions on solicitation and conspiracy that under the facts of this case the failure of the trial court to *sua sponte* give it resulted in an unfair trial." *Carey*, 94 Ill. App. 3d at 637.

The appellate court sought to distinguish *Carey* on three grounds. 336 Ill. App. 3d at 528-29. The dissent argued that these grounds were insufficient. 336 Ill. App. 3d at 532-33 (Holdridge, J., dissenting). Although we, of course, are not bound by *Carey*, we note that the result advocated by the dissent corresponds to our disposition today. See 336 Ill. App. 3d at 533 (Holdridge, J., dissenting).

We now turn to the appellate court's positive arguments for granting defendant relief. Without referring to the record to explain how defendant's trial may have been rendered unfair by the omission of the instruction defining first degree murder, the appellate court held that the omission was "a substantial and prejudicial defect." 336 Ill. App. 3d at 529. However, we have never held any such omission to be plain error without considering the effect that the omission had on defendant's trial. On the contrary, the result in *Underwood* demonstrates that omission of the definition of a term used to instruct the jury on the essential issue in the case is not necessarily plain error. See *Underwood*, 72 Ill. 2d at 130-31. Furthermore, even an incorrect instruction on an element of the offense is not necessarily reversible error. *People v. Jones*, 81 Ill. 2d 1, 10 (1979). In *Jones* the jury was erroneously instructed that a mental state other than intent to kill could support a guilty verdict for attempted murder. The victim in *Jones* survived being

abducted, robbed, and shot four times. The defendant did not deny that the shooter intended to kill, but denied responsibility for the shooting. We upheld his conviction for attempted murder, holding that the erroneous instruction on the intent element of attempted murder was harmless where intent to kill was "blatantly evident" from the evidence. *Jones*, 81 Ill. 2d at 10.

The appellate court appears to have relied on the following language, which it quoted from our decision in *People v. Koshiol*:

> " ' "[I]t would seem utterly meaningless to instruct a jury on attempt to commit a 'specific offense' without defining the specific offense alleged to have been committed. Such procedure would leave the jury entirely to its own devices *in determining what specific offense the court was referring to in its definition of attempt as well as* in determining whether the defendant had taken a substantial step toward its commission." ' " (Emphasis in original.) 336 Ill. App. 3d at 528-29, quoting *People v. Carey*, 94 Ill. App. 3d 631, 636, (1981), quoting *People v. Koshiol*, 45 Ill. 2d 573, 579 (1970).

In *Koshiol* the defendant poisoned her husband but failed to kill him. The jury was instructed on attempted murder and on the definition of murder. The defendant argued that it would only confuse the jury to instruct on the definition of murder when no one died. We held that it was not error to give the definitional instruction. *Koshiol*, 45 Ill. 2d at 579. Moreover, in *Koshiol* the instruction on attempt did not name the object offense but only spoke of some unnamed "specific offense." It was only the definition of first degree murder that told the jury what "specific offense" was allegedly attempted. In this case the instruction on conspiracy did tell the jury the object offense was first degree murder. Thus *Koshiol* is distinguishable. We conclude that the reasoning of the appellate court fails to show that defendant is entitled to relief.

We now turn to defendant's argument. Defendant asserts that the facts in this case reveal that the erroneous

omission of an instruction defining first degree murder rises to the level of plain error. Her argument relies on two contentions: (1) the jury may have concluded that the State failed to prove that she intended that James be killed, but (2) the jury may have convicted her of conspiracy because the omission led it to believe mistakenly that it could convict based on some mental state short of intent to kill.

As explained above, an omitted jury instruction constitutes plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial. This rule does not require that defendant prove beyond doubt that her trial was unfair because the omitted instruction misled the jury to convict her. It does require that she show that the error caused a *severe* threat to the fairness of her trial. *Ogunsola* and *Underwood* exemplify cases where an omitted instruction did severely threaten the fairness of a trial and one where it did not, respectively.

Before considering whether the omission in this case severely threatened the fairness of defendant's trial, we must answer two preliminary questions. First, what would a correct instruction have told the jury? Second, what was the essential disputed issue in this case?

The committee note to the IPI instruction defining conspiracy mandates that if a defendant is charged with conspiracy to commit first degree murder, Instruction 7.01 defining first degree murder must also be given. IPI Criminal 4th No. 6.03, Committee Note. The committee note to the instruction defining first degree murder, Instruction 7.01, further provides that when the prosecution is for an inchoate offense such as attempt, solicitation, or conspiracy, paragraphs [2] through [4] of the instruction are not to be given. IPI Criminal 4th No.

7.01, Committee Note. The instruction, so truncated, states in relevant part:

> "A person commits the offense of first degree murder when he kills an individual *** if, in performing the acts which cause the death,
>
> ▮ he intends to kill or do great bodily harm to that individual[.]" IPI Criminal 4th No. 7.01.

The committee note further requires, in attempted first degree murder cases, that paragraph [1] be modified to eliminate the intent to do great bodily harm and thus require the intent to kill. IPI Criminal 4th No. 7.01, Committee Note. Defendant argues that this further requirement properly applies to conspiracy cases as well as attempt. As defendant points out, we have held that, because a person is not guilty of attempted murder unless he intended to kill, jury instructions in attempted first degree murder cases must make clear that proof of nothing less than intent to kill is required to convict. *People v. Harris*, 72 Ill. 2d 16, 27 (1978); *People v. Trinkle*, 68 Ill. 2d 198, 204 (1977). We reasoned that if a jury were instructed that the lesser intent to do great bodily harm is sufficient, then it could find a defendant who intended to seriously hurt the victim but not kill him guilty of attempted murder when, in law, he would only be guilty of aggravated battery. *Trinkle*, 68 Ill. 2d at 201. Defendant urges that our reasoning applies to conspiracy as well as attempt. The State agrees.

We also agree. The elements of the crime of conspiracy are (1) agreement with another that an offense be committed, (2) intent that the offense be committed and (3) an act in furtherance of the agreement by the defendant or a coconspirator. 720 ILCS 5/8—2(a) (West 2000). Because murder requires that a victim die, logic requires that an agreement to commit a crime, absent intent to kill, cannot be conspiracy to commit any sort of murder. A defendant who agreed with others to beat someone and who only intended that a beating occur may be guilty

of conspiracy of some sort, but not of conspiracy to commit murder. Thus, jury instructions in cases of conspiracy to commit first degree murder must make clear that the State must prove that the defendant intended a killing. We conclude that, had the jury in this case been properly instructed, it would have been given a definition of first degree murder that, when combined with the instructions on conspiracy, would make clear the State must prove defendant intended that her husband James be killed.

We note that our decision to follow *Trinkle* and *Harris* to conclude that the jury should have been told expressly that proof of intent to kill is required to convict a person of conspiracy does not commit us to follow the disposition of those cases. As the appellate court recognized, those cases involved an instruction that misstated the law. See 336 Ill. App. 3d at 527. We find the case at bar, where the jury was not given any instruction, is clearly distinguishable.

The second preliminary question concerns the essential disputed issue in this case. It was undisputed that defendant discussed killing James with J.S. and M.H. on many occasions, and that she never told them not to kill James. The disputed issue was what defendant intended, not what she did. The State argued to the jury that she wanted James dead. Defendant argued she did not intend that James be killed, but only wanted to talk the boys out of killing him by finding flaws in their plans. As we have just explained, conspiracy to commit first degree murder requires intent to kill. Thus the essential disputed issue was whether defendant intended that James be killed.

We now turn to defendant's first point, which is that the jury may have concluded that the State did not prove that defendant intended that James be killed. Defendant attempts to support this by pointing out evidence before

the jury that purported to show that she did not intend that James be killed. However, the evidence on the issue of defendant's intent was overwhelming. Intent to kill may be proved by the circumstances. *People v. Williams*, 165 Ill. 2d 51, 64 (1995). The undisputed circumstances of this case are that defendant participated in numerous discussions about killing James and criticized various methods of killing him. For example, she advised the boys not to use a shotgun because it would be too loud. She also criticized various ways to establish an alibi. She never said anything before the attack to indicate that she did not want the boys to kill James. A reasonable juror could and very likely would infer intent to kill from these circumstances.

In her videotaped statement, and at trial through counsel's closing argument, defendant maintained that in spite of her conduct her intention was that James not be killed. She explained that she wished to talk the boys out of killing James by pointing out flaws in their plan. She explained her failure to do anything more to oppose the idea of killing James by claiming that she, a 26-year-old woman, was afraid of losing her 16-year-old boyfriend, J.S., if she overtly opposed the idea of murdering the father of her four children.

The mere fact that defendant offered an exculpatory explanation for her conduct is insufficient to show that it is likely that the jury concluded that the State failed to prove that defendant intended that James be killed. Of course, it is for the trier of fact to judge defendant's credibility. See *People v. Locascio*, 106 Ill. 2d 529, 537 (1985). In this case, it is apparent the jury did not accept her explanation.

Defendant also offers the following argument. The jury acquitted her on the charge of attempted first degree murder on an accountability theory. When the jury was instructed on attempted murder, it was told that the ele-

ments are (1) defendant, or someone for whose conduct defendant is legally responsible, performed a substantial step toward killing an individual and (2) defendant, or someone for whose conduct defendant is legally responsible, did so with intent to kill an individual. It is undisputed that J.S. hit James with the poker, which clearly was a substantial step toward killing James. It is also undisputed that defendant participated in conversations about killing James. If those conversations supported the finding of an agreement necessary for defendant's conviction for conspiracy, they must also support a finding of abetting in planning, which would make her legally responsible for J.S.'s actions. Thus, defendant concludes, the only logical explanation for the acquittal on attempted murder is that the jury thought the State had not proved intent to kill.

Defendant's argument fails upon consideration of the whole record. The jury also acquitted on the charge of home invasion on an accountability theory. The jury was told that the elements of home invasion are that defendant or one for whose conduct she is legally responsible was (1) not a peace officer acting in the line of duty who (2) knowingly and without authority entered the dwelling of another when he (3) knew or had reason to know that a person was present and (4) intentionally caused injury to James Hopp, a person within the dwelling place. The undisputed facts establish all the elements of home invasion as to J.S. However, defense counsel attacked the notion of legal accountability during closing argument. One of defense counsel's themes was "I am not my brother's keeper." Thus defendant's acquittal on the home invasion charge indicates that the jury decided defendant was not accountable for J.S.'s actions. Rejection of accountability for J.S.'s actions also explains the acquittal on the charge of attempted murder. On the other hand, defendant's theory that the jury thought the

State did not prove intent to kill does not explain the acquittal on home invasion, because intent to kill is not an element of home invasion. Therefore, the fact the jury in this case acquitted defendant of attempted murder provides little or no reason to conclude the jury thought that the State did not prove defendant intended that James be killed.

In sum, we conclude that there is inadequate support in the record for defendant's contention that the jury may have thought that the State did not prove that defendant intended that James be killed. Her contention amounts to mere speculation. Speculation about what the jury may have thought is insufficient to show that the omission of the instruction defining first degree murder severely threatened the fairness of defendant's trial and that it was plain error.

In addition to suggesting that the jury may have concluded that intent to kill was not proven, defendant contends that the omission of the instruction defining first degree murder may have misled the jury to think that it could convict based on some mental state other than intent to kill. However, there is nothing in the record that indicates that the jury may have been misled.

The jury was instructed that it should not convict defendant of conspiracy unless the State proved beyond a reasonable doubt that defendant intended that the offense of first degree murder be committed. As the dissenting justice below stressed, it is commonly understood that to murder someone is to kill him. See 336 Ill. App. 3d at 531 (Holdridge, J., dissenting). Jurors are not required to set aside the observations and inferences that they would ordinarily make. See IPI Criminal 4th No. 1.01[10] (instructing jurors to consider the evidence in light of "your own observations and experience in life"). The jurors, knowing that to murder is to kill, would undoubtedly understand from the instruction

given in this case that the State had to prove that defendant intended that James be killed. See also *People v. Ambrose*, 28 Ill. App. 3d 627, 633 (1975) (holding that, because laypersons have general knowledge of what armed robbery is, failure to instruct jury on the definition of armed robbery in a conspiracy case is not reversible error).

Defendant argues that the jurors may have been misled if they knew that in Illinois a person can be guilty of first degree murder based on mental states other than intent to kill, such as intent to do great bodily harm or intent to commit a forcible felony. See 720 ILCS 5/9—1 (West 2000). Jurors who know this fact about Illinois law might mistakenly infer that defendant could be guilty of conspiracy to commit first degree murder if she only intended that James suffer great bodily harm or that he be the victim of a forcible felony. Defendant urges that we cannot presume that jurors are ignorant of Illinois law.

Accepting, *arguendo*, that the jurors did know that one can commit first degree murder without intending to kill, we still find little likelihood that the jury was misled. At no point in the record does anyone suggest to the jury that intent to kill is not required. Therefore, we must presume that the jury relied on the commonly understood fact that to murder is to kill instead of mistakenly inferring that intent to kill is not required.

## CONCLUSION

We conclude that defendant has not shown from the record in this case that there is any significant likelihood that the jury concluded that the State did not prove that defendant intended that James be killed. The evidence on the disputed issue, whether defendant intended that James be killed, was overwhelming. Defendant has merely speculated that the jury may have thought that intent to kill was not proved and that it may have

convicted her of conspiracy because the omitted jury instruction on the definition of first degree murder misled it to think that intent to kill is not required. However, such speculation is insufficient to show that the omission severely threatened the fairness of defendant's trial. Therefore, the omission does not rise to the level of plain error. We reverse the judgment of the appellate court and affirm the defendant's conviction for conspiracy to commit first degree murder.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*