# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Bell, 2012 IL App (5th) 100276**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CAROL J. BELL, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-10-0276 |
| Filed | May 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for attempted possession of anhydrous ammonia was upheld over her contention that the jury was not instructed that a "substantial step" is an essential element of the offense, since *Woods* and *Paluch* establish that a "substantial step" is an essential element of the offense but defendant waived the issue by failing to object at trial or raise the issue in her motion for a new trial, and for purposes of a plain-error analysis, the record showed defendant was convicted on an accountability theory, the jury was properly instructed on accountability, the evidence relevant to the "substantial step" taken by her companion to steal ammonia was overwhelming, and the omission of the attempt definitional instruction did not amount to plain error. |
| Decision Under Review | Appeal from the Circuit Court of Shelby County, No. 09-CF-159; the Hon. Michael P. Kiley, Judge, presiding. |
| Judgment | Affirmed as modified; motion denied. |

Counsel on Appeal    Michael J. Pelletier, Johannah B. Weber, and Robert S. Burke, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Deborah Riley, State's Attorney, of Shelbyville (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    JUSTICE STEWART delivered the judgment of the court, with opinion. Justices Spomer and Wexstten concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury convicted the defendant, Carol J. Bell, of attempted possession of anhydrous ammonia in violation of section 25(a)(1) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/25(a)(1) (West 2008)). On appeal, the defendant maintains that her right to a jury trial was denied by the circuit court's failure to instruct the jury that an essential element of the offense of attempt includes a "substantial step." For the following reasons, we affirm the defendant's conviction.

¶ 2    BACKGROUND

¶ 3    The State originally charged the defendant with unlawful possession of anhydrous ammonia, but the State later amended the charge to attempted unlawful possession of anhydrous ammonia. At the defendant's jury trial, the following evidence was presented.

¶ 4    Illinois State Police Investigator Clay Woodard testified that on October 20, 2009, he was involved in a stakeout at a fertilizer plant to "curb the theft of anhydrous ammonia that is used in the manufacture of methamphetamine." The fertilizer plant had various tanks on its property for storage of anhydrous ammonia.

¶ 5    At approximately 10:52 p.m. during the stakeout, Woodard saw a vehicle driving in the vicinity of the tanks. Woodard observed a "larger male" get out of the passenger side of the vehicle and run across the fertilizer plant's parking lot toward a group of anhydrous ammonia tanks. The suspect was carrying a bag. Woodard tried to quietly approach the suspect, but Woodard heard the suspect drop the bag and take off running. Woodard ran after the suspect and took him into custody. He was later identified as Jason Swango.

¶ 6    Woodard retrieved the bag that Swango had dropped, and inside the bag he found a 20-pound propane tank that is commonly used for a gas grill. The tank, however, had been camouflaged and had a modified fitting on its top. Woodard testified that he had found similar tanks being used at methamphetamine laboratories. Sergeant Matt McCormick with

the Illinois State Police also testified that Swango's modified propane tank was something that was typically used to steal anhydrous ammonia.

¶ 7    The vehicle that Swango exited was driven by the defendant. When Swango jumped out of the defendant's car, the defendant drove away from the tanks, but she returned to the area of the tanks and was stopped and arrested by Officer Reeves of the Shelby County sheriff's office. After her arrest, Woodard questioned the defendant. During the questioning, the defendant admitted that she was a methamphetamine user and had purchased pseudoephedrine pills for Swango in the past for the manufacture of methamphetamine. Swango compensated her a half a gram of methamphetamine per box of pseudoephedrine.

¶ 8    The defendant also told Woodard that on the date of the incident, Swango asked her if she would drive him to the fertilizer plant so that he could steal some anhydrous ammonia. She said that she did not know where to go but that Swango directed her as she drove. She told Woodard that she had expected to be compensated by Swango with gas money, cigarettes, and some of the methamphetamine manufactured with the anhydrous ammonia.

¶ 9    The defendant testified, however, that on the day of the incident, Swango called her and asked for a ride to his girlfriend's house. She agreed and drove to his house to pick him up. Swango had a bag with him when he got in the defendant's car, and the defendant testified that she did not ask Swango what he had in the bag. The defendant testified that on their way to Swango's girlfriend's house, Swango directed the defendant to turn down a particular country road. The defendant assumed that Swango was looking for his girlfriend.

¶ 10    After driving for a period of time, they approached what she later learned was a fertilizer plant, and Swango directed the defendant to stop. According to the defendant, Swango then opened the car door and grabbed his bag. The defendant asked Swango what he was doing, Swango replied that everything will be fine, and he added, "Come back by and get me." The defendant testified that she initially did not know that the place where they stopped was an anhydrous plant but figured it out when Swango jumped out of her vehicle.

¶ 11    The defendant claimed she was "freaked out" because she did not know where she was, and she took off down the road to head home. She made a couple of turns and ended back in front of the plant again where she was stopped and arrested by Officer Reeves.

¶ 12    The defendant testified that she attempted to explain to the officers that she was merely giving Swango a ride to his girlfriend's house, but the officers kept interrupting her, telling her "no," and telling her what she was doing at the plant and what her plans were. She denied telling the officers that she agreed to go with Swango to steal anhydrous ammonia and denied telling them that she would be paid in gas money, cigarettes, and methamphetamine made with the anhydrous ammonia. She claimed to have no idea that Swango was going to steal anhydrous ammonia when she picked him up.

¶ 13    She testified that the interrogation lasted for over an hour and that she was taken to the county jail when it ended. At the conclusion of the evidence, the jury convicted the defendant of attempted possession of anhydrous ammonia. The circuit court subsequently sentenced the defendant to four years' imprisonment in the Department of Corrections. The defendant timely filed a notice of appeal of her conviction and sentence.

¶ 14                              ANALYSIS

¶ 15        The first issue the defendant raises on appeal is that the punishment for attempted possession of anhydrous ammonia is unconstitutionally disproportionate to the punishment for general attempt of the same crime and unconstitutionally disproportionate when compared to other punishments provided in the Methamphetamine Control and Community Protection Act (720 ILCS 646/1 to 9999 (West 2008)). At oral argument, however, the defendant expressly withdrew this issue from our consideration; therefore, we will not decide it.

¶ 16        The second issue the defendant raises on appeal is that she was denied a fair trial as a result of the circuit court failing to instruct the jury that an essential element of the offense of attempt is a substantial step toward the commission of the underlying offense.

¶ 17        Illinois Pattern Jury Instructions, Criminal, No. 6.05 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 6.05), provides a definitional instruction of attempt as follows: "A person commits the offense of attempt when he, [without lawful justification and] with the intent to commit the offense of _____, does any act which constitutes a substantial step toward the commission of the offense of _____." This instruction was not given to the jury in the present case.

¶ 18        Before the defendant's jury trial began, the circuit court conducted a "preliminary run-through of the instructions," but the court did not make a record of this preliminary jury-instruction conference. Apparently, IPI Criminal 4th No. 6.05 was discussed at this preliminary jury-instruction conference.

¶ 19        At the conclusion of the evidence, the circuit court conducted the formal jury-instruction conference, and the following took place:

> "THE COURT: People's Instruction No. 14 is IPI Criminal No. 6.05.
>
> [The prosecutor]: Your Honor, I think you requested I take that attempt out when we were in our pre, because you thought that the statute itself explained that.
>
> THE COURT: So that has been withdrawn?
>
> [The prosecutor]: Yes.
>
> THE COURT: Okay. I show 14 as *** Non-IPI based on statute 720 ILCS 646/25(a)(1). The definition of the offense.
>
> [Defense counsel]: No objection.
>
> THE COURT: That will be given."

¶ 20        People's Instruction No. 14 defined the offense as follows: "A person commits the offense of attempted unlawful possession of anhydrous ammonia when she knowingly attempts to engage in the possession of anhydrous ammonia with the intent that the anhydrous ammonia be used to manufacture methamphetamine." Nothing in the instructions informed the jury that a "substantial step" is an essential element that the State must prove to convict someone of attempted unlawful possession of anhydrous ammonia. The defendant argues that the jury should have been given IPI Criminal 4th No. 6.05.

¶ 21        In response to the defendant's argument, the State argues that the language of the statute that defines the offense of attempted unlawful possession of anhydrous ammonia does not

include a "substantial step" as an element. The State maintains that, while the general attempt statute includes a "substantial step" as an element of that offense (720 ILCS 5/8-4(a) (West 2008)), the offense of attempted unlawful possession of anhydrous ammonia is defined separately from the general offense statute (720 ILCS 646/25(a)(1) (West 2008)). Therefore, the State concludes, the legislature took attempted possession of anhydrous ammonia out of the purview of the general attempt statute and elected not to include a substantial step in defining that offense. Accordingly, the State argues that the circuit court properly ruled that the jury should not receive a "substantial step" instruction. We disagree with the State.

¶ 22　　In *People v. Woods*, 24 Ill. 2d 154, 156, 180 N.E.2d 475, 476 (1962), the defendant was convicted under a statute that provided for imprisonment for whoever "*attempts* to procure or produce an abortion or miscarriage." (Emphasis added.) Ill. Rev. Stat. 1959, ch. 38, ¶ 3. Although the statute did not define the offense to include a "substantial step" requirement, the supreme court, nonetheless, held that "an attempt does exist where a person, with intent to commit a specific offense, performs acts which constitute substantial steps toward the commission of that offense." *Woods*, 24 Ill. 2d at 158, 180 N.E.2d at 478.

¶ 23　　Likewise, in *People v. Paluch*, 78 Ill. App. 2d 356, 222 N.E.2d 508 (1966), the defendant was charged under a statute that made it a misdemeanor for anyone to "*attempt* to practice barbering without a valid and current certificate of registration as a registered barber." (Emphasis added.) Ill. Rev. Stat. 1965, ch. 16¾, ¶ 14.92(b)(1). Again, similar to the attempted possession of anhydrous ammonia statute, the legislature defined this offense apart from the general attempt statute and without expressly stating that a "substantial step" was a required element of the offense. Nonetheless, the *Paluch* court looked to the general attempt statute (Ill. Rev. Stat. 1965, ch. 38, ¶ 8-4(a)) and concluded that "[t]wo elements must be present to constitute an attempt: (1) an intent to commit a specific offense, and (2) an act which is a substantial step towards its commission." *Paluch*, 78 Ill. App. 2d at 358, 222 N.E.2d at 509.

¶ 24　　In the present case, the offense of attempted possession of anhydrous ammonia is defined apart from the general attempt statute and does not expressly include a "substantial step" as an element of the offense. Nonetheless, *Woods* and *Paluch* establish that a "substantial step" is a required element of the offense because " '[m]ere preparation to commit a crime *** does not constitute an attempt to commit it.' " *Paluch*, 78 Ill. App. 2d at 360, 222 N.E.2d at 510 (quoting *Woods*, 24 Ill. 2d at 158, 180 N.E.2d at 478). Accordingly, the circuit court erred in not giving IPI Criminal 4th No. 6.05.

¶ 25　　However, our conclusion that the circuit court should have given IPI Criminal 4th No. 6.05 does not end our analysis. The defendant failed to object at trial to the circuit court's failure to give IPI Criminal 4th No. 6.05 and did not raise the issue in her motion for a new trial. The error, therefore, was not properly preserved for our review. The defendant asks us to review the error under the plain-error doctrine.

¶ 26　　In *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005), the Illinois Supreme Court held that "the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the

closeness of the evidence." Under the first prong, the defendant must prove " 'prejudicial error,' " by showing that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id.* at 187, 830 N.E.2d at 479. Under the second prong, the defendant must prove that "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* at 187, 830 N.E.2d at 479-80. Prejudice to the defendant is presumed under the second prong because of the importance of the right involved, " '*regardless* of the strength of the evidence.' " (Emphasis in original.) *Id.* at 187, 830 N.E.2d at 480 (quoting *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920, 941 (2000)).

¶ 27    The defendant contends that, under the second prong of the plain-error doctrine, the trial court's failure to give IPI Criminal 4th No. 6.05 deprived her of a fair trial such that automatic reversal is required and that the error is not subject to harmless-error analysis. We disagree and find the supreme court's analysis in *People v. Hopp*, 209 Ill. 2d 1, 805 N.E.2d 1190 (2004), to be instructive concerning our plain-error analysis in the present case.

¶ 28    In *Hopp*, a jury found the defendant guilty of conspiracy to commit first-degree murder. On appeal, the supreme court considered whether the trial court committed plain error by failing to give a required jury instruction defining first-degree murder. *Id.* at 4, 805 N.E.2d at 1192. Neither party tendered a jury instruction defining first-degree murder, the object offense of the conspiracy. *Id.* at 6, 805 N.E.2d at 1193. The court considered whether this error constituted a "substantial defect" for plain-error purposes. *Id.* at 7, 805 N.E.2d at 1194.

¶ 29    The *Hopp* court stated that "the erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* at 8, 805 N.E.2d at 1194. The supreme court was critical of the appellate court's decision that reversed the *Hopp* defendant's conviction. The appellate court reversed the conviction because it found that the omission was a substantial and prejudicial defect. The supreme court noted, however, that the appellate court did not refer to the record to explain how the trial was rendered unfair. *Id.* at 10, 805 N.E.2d at 1196. The supreme court stated: "[W]e have never held any such omission to be plain error without considering the effect that the omission had on defendant's trial. On the contrary, *** omission of the definition of a term used to instruct the jury on the essential issue in the case is not necessarily plain error." *Id.* The *Hopp* court then turned to the facts of the case to determine whether the erroneous omission of an instruction defining first-degree murder rose to the level of plain error.

¶ 30    The court emphasized that the defendant was required to show that the omission of the instruction caused a *severe* threat to the fairness of her trial. *Id.* at 12, 805 N.E.2d at 1197. Its analysis required it to answer two preliminary questions: (1) what would a correct instruction have told the jury and (2) what was the essential disputed issue in the case? *Id.* With respect to the first question, the court concluded, "[H]ad the jury in this case been properly instructed, it would have been given a definition of first degree murder that, when combined with the instructions on conspiracy, would make clear the State must prove defendant intended that her husband *** be killed." *Id.* at 14, 805 N.E.2d at 1198. With respect to the second question, the court noted that the essential disputed issue in that case

was whether the defendant intended that her husband be killed. *Id.*

¶ 31    Finally, in resolving the issue of plain error for the omitted definitional instruction, the court noted that "the evidence on the issue of defendant's intent was overwhelming." *Id.* at 15, 805 N.E.2d at 1198. The court highlighted evidence that the defendant participated in numerous discussions about killing her husband and criticized various methods of killing him. *Id.* The court also noted that the evidence presented at the trial included the defendant's videotaped statement. *Id.* The court stated, "The mere fact that defendant offered an exculpatory explanation for her conduct is insufficient to show that it is likely that the jury concluded that the State failed to prove that defendant intended that [her husband] be killed." *Id.* Rather, "[t]he evidence on the disputed issue, whether defendant intended that [her husband] be killed, was overwhelming." *Id.* at 18, 805 N.E.2d at 1200. Therefore, the omission of the definitional instruction did "not rise to the level of plain error." *Id.* at 19, 805 N.E.2d at 1200.

¶ 32    Likewise, in the present case, we must examine whether the omission of the attempt definitional instruction created "a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* at 8, 805 N.E.2d at 1194. "This standard is a difficult one to meet." *People v. Sargent*, 239 Ill. 2d 166, 191, 940 N.E.2d 1045, 1059 (2010).

¶ 33    We will begin our analysis, as the supreme court did in *Hopp*, by answering the two preliminary questions: (1) what would a correct instruction have told the jury and (2) what was the essential disputed issue in the case? Concerning the first question, as noted above, the correct instruction would have told the jury that a person commits the offense of attempt when he, with the intent to commit the underlying offense, does any act which constitutes a substantial step toward the commission of that offense. Therefore, had the jury in this case been properly instructed, it would have been given a definition of attempt that, when combined with the instructions on attempted possession of anhydrous ammonia, would make clear that the State must prove a "substantial step" as an element of that offense.

¶ 34    With respect to the second question, the evidence at the trial established that the essential disputed issue in this case involved whether the defendant was accountable for the actions of Swango–whether the defendant, with the intent to promote or facilitate the commission of attempted possession of anhydrous ammonia, knowingly solicited, aided, abetted, agreed to aid, or attempted to aid Swango in the planning or his commission of attempted possession of anhydrous ammonia.

¶ 35    The evidence presented at the trial included statements the defendant made to the arresting officers, admitting that she drove Swango to the fertilizer plant to aid him in his attempt to possess anhydrous ammonia for the purpose of manufacturing methamphetamine. She told the officers that she drove Swango to the fertilizer plant for that specific purpose and, in return, Swango agreed to give her gas money, cigarettes, and some of the methamphetamine manufactured with the anhydrous ammonia that Swango attempted to possess. The defendant, however, testified that she agreed to give Swango a ride to his girlfriend's house, that Swango directed her to drive down some country roads, and that she did not know what was going on until Swango jumped out of the car and ran toward the

anhydrous ammonia tanks at the plant. She testified that, at that point, she just wanted to get out of there and go home.

¶ 36    Accordingly, the essential issue at the trial did not concern any "attempt" aspect of the offense with respect to the defendant's conduct, but instead concerned the defendant's accountability based on her aiding and abetting Swango in *his* attempt. This essential issue concerned IPI Criminal 4th No. 5.03, the accountability instruction, which was properly given to the jury.

¶ 37    With the answers to the two preliminary questions in mind, we turn to the issue of whether the omission of the attempt definitional instruction created "a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8, 805 N.E.2d at 1194. It did not.

¶ 38    Because the defendant was found guilty based on an accountability theory, the evidence relevant to the offense of attempted possession of anhydrous ammonia is the evidence surrounding Swango's attempt to possess anhydrous ammonia, not the defendant's. Similar to *Hopp*, the evidence relevant to the "substantial step" taken by Swango to possess anhydrous ammonia was overwhelming. In addition, in the present case, it was also undisputed.

¶ 39    Woodard testified about staking out the anhydrous ammonia tanks at the fertilizer plant. He saw the defendant drive up in her car (evidence of the defendant aiding and abetting) and saw Swango jump out of the car and run toward the anhydrous ammonia tanks with a bag in his possession (evidence of Swango's substantial step). Woodard tried to quietly approach Swango near the tanks, but as Woodard got closer, Swango dropped his bag and took off running. Both Swango and the bag were taken into police custody. Inside Swango's bag, Woodard found a propane tank that had been modified in a way that was commonly used for stealing anhydrous ammonia. None of the evidence concerning Swango's substantial step to possess anhydrous ammonia was disputed at the trial. Instead, it was corroborated by the defendant's own testimony. Accordingly, on the issue of attempted possession of anhydrous ammonia, evidence of Swango's "substantial step" was overwhelming and was not a disputed issue during the trial. The disputed issue at the trial concerned the defendant's *accountability* for Swango's actions, and the jury was properly instructed with the accountability instruction. Therefore, the omission of the attempt definitional instruction did "not rise to the level of plain error." *Hopp*, 209 Ill. 2d at 19, 805 N.E.2d at 1200. There is no danger that the jury incorrectly convicted the defendant, because it was not instructed concerning Swango's "substantial step" to unlawfully possess anhydrous ammonia.

¶ 40    The next issues the defendant raises on appeal concern credits for her presentence custody. She argues that her mittimus should be amended to grant her credit against her sentence of imprisonment for three days of confinement prior to the trial. In addition, the defendant argues that she should receive a $15 credit against her drug fine, a credit of $5 per day for each day she was in custody prior to her sentencing. The State concedes that the defendant is entitled to three days' credit and a total credit of $15 against her drug fine, but it argues that she has already received two days' credit and a $10 credit and, therefore, is

entitled to only one more day of credit and another $5 credit toward her drug fine. The State seeks to supplement the record with postappeal documents reflecting that the defendant has been credited with two days of sentencing credit and a $10 reduction in her drug fine. We ordered the State's motion to supplement the record to be taken with the case.

¶ 41　　Because the parties agree concerning the total number of days of credit (three) and the total dollar amount of credit ($15) for the defendant's presentence custody, we do not need to grant the State's motion to supplement the record. Accordingly, the State's motion to supplement the record is denied. We modify the defendant's sentencing order, without remand, to reflect a total of three days' credit for time served in presentence custody and to reflect a total of $15 in credit against her drug fine. See *People v. McCreary*, 393 Ill. App. 3d 402, 409, 915 N.E.2d 745, 750 (2009).

¶ 42　　The final argument that the defendant raises on appeal is that the $25 assessment for the State Police Services Fund pursuant to section 5-9-1.1-5 of the Unified Code of Corrections (730 ILCS 5/5-9-1.1-5 (West Supp. 2009)) took effect on January 1, 2010, subsequent to the date of the offense. Accordingly, the defendant argues that the circuit court improperly imposed the $25 assessment pursuant to that statute. The State confesses that if the fine has been assessed, it should not have been. Accordingly, we further modify the defendant's sentencing order to reflect that the defendant is not to be assessed $25 pursuant to section 5-9-1.1-5.

¶ 43　　　　　　　　　　　　　　　　CONCLUSION

¶ 44　　For the foregoing reasons, the defendant's conviction for attempted possession of anhydrous ammonia is hereby affirmed. The defendant's sentence is affirmed as modified.

¶ 45　　Affirmed as modified; motion denied.