NOTICE
Decision filed 05/04/17. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2017 IL App (5th) 120079-B

NO. 5-12-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Hamilton County. |
| | ) | |
| v. | ) | No. 11-CF-50 |
| | ) | |
| JEREMY R. THOMPSON, | ) | Honorable |
| | ) | David K. Frankland, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Moore and Justice Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial in the circuit court of Hamilton County, defendant, Jeremy R. Thompson, was convicted of attempt to procure anhydrous ammonia with the intent to manufacture methamphetamine (720 ILCS 646/25(a)(2) (West 2010)) and tampering with anhydrous ammonia equipment (720 ILCS 646/25(d)(2) (West 2010)). Defendant was sentenced as a Class X offender pursuant to section 5-4.5-95(b) of the Unified Code of Corrections to 18 years in the Department of Corrections to be followed by 3 years of mandatory supervised release. 730 ILCS 5/5-4.5-95(b) (West 2010). Defendant appealed to this court, raising three issues: (1) whether the trial court erred in admitting lay opinion

1

testimony identifying defendant from surveillance recordings, (2) whether the trial court erred in failing to instruct the jury on an essential element of attempt, and (3) whether defendant's conviction for tampering with anhydrous ammonia equipment should be vacated under the one-act, one-crime rule because it arose from the same physical act which formed the basis of his conviction for procurement of anhydrous ammonia with the intent to manufacture methamphetamine.

¶ 2     The State conceded that convicting defendant of both attempt to procure and tampering was in error in that the two charges were based on the same physical act. Ultimately, we (1) reversed defendant's convictions on the basis that the trial court erred in admitting the lay opinion testimony because none of the witnesses aided the jurors' own identification of who was depicted in the surveillance video; (2) agreed, based on the State's concessions, that the two charges were based on the same physical act, but were confident that such error would not occur on remand; and (3) found it unnecessary to address the other issue and remanded with directions. *People v. Thompson*, 2014 IL App (5th) 120079, 21 N.E.3d 1. The State filed a petition for leave to appeal, which our supreme court granted. The supreme court reversed our judgment and remanded, finding any error in admitting the testimony as lay opinion testimony was harmless. The court subsequently issued a modified opinion in which it reversed our judgment and remanded the case to us in order to consider other issue(s) properly before us. *People v. Thompson*, 2016 IL 118667, 49 N.E.3d 393.

¶ 3     Upon remand, we requested the parties file supplemental briefs. Both parties have complied with our request. The issue now before us is the issue we did not address in the

first appeal, whether the trial court erred in failing to instruct the jury on "substantial step," an essential element of attempt. For the following reasons, we affirm.

¶ 4                                         FACTS

¶ 5      For our statement of facts, we borrow liberally from our first opinion issued in this matter as well as our supreme court's opinion. At trial, Deputy Jason Stewart of the Hamilton County sheriff's department testified how methamphetamine is produced using anhydrous ammonia, which is often stolen from local farm supply stores. Deputy Stewart explained that in June 2011, he oversaw the installation and maintenance of a surveillance camera at Hamson Ag after the owner contacted the sheriff's department because the store's equipment was often damaged by thieves. The camera was directly aimed at three tanks containing anhydrous ammonia.

¶ 6      On July 21, 2011, Deputy Stewart was dispatched to Hamson Ag after the three tanks' caps were removed. Stewart reviewed copies of recordings made by the surveillance camera. He testified the surveillance video showed a white male with short, dark hair and a balding or thinning spot on the back of the head, a large forehead, and a receding hairline, wearing a gray cut-off T-shirt and baggy pants, carrying a five-gallon bucket and a green soda bottle with a clear hose attached. Stewart explained that a soda bottle attached to a hose is a common way to steal anhydrous ammonia. Stewart noted the video showed the subject walking in front of the tanks, then out of view, then back in view, and then in between the tanks. The subject emerged from between the tanks carrying the bucket with the soda bottle and then ran off. While Stewart did not recognize

3

the subject, he circulated the video to other members of his department and to Chief Deputy William Sandusky to distribute to other counties and agencies. The video was played for the jury.

¶ 7    Chief Deputy Sandusky testified he spoke with Stewart and viewed the surveillance video. Sandusky did not immediately recognize the subject in the video. He emailed a still image from the video to other police departments. Several days later, he was contacted by Ronnie Almaroad, head of narcotics at the Mt. Vernon police department, who recognized the person depicted in the video as defendant.

¶ 8    Sandusky then interviewed defendant after giving defendant his *Miranda* rights and receiving defendant's waiver thereof. Sandusky testified that after he informed defendant he had been caught on surveillance video, defendant asked to see the evidence. Sandusky showed defendant the still photograph, after which defendant looked at it for several seconds and then uttered, "I wish this wasn't me—or I wish I could say this wasn't me, but it is." Defendant said the photo was "pretty cool" and wanted his own copy and asked if it would be in the newspaper.

¶ 9    Sandusky testified that defendant admitted to manufacturing methamphetamine for the previous four to five months and said he had stolen approximately two gallons of anhydrous ammonia from Hamson Ag on four or five occasions. Defendant explained he either used the anhydrous ammonia to manufacture methamphetamine or traded it to get cigarette money. Defendant also said he purchased pseudoephedrine, a necessary ingredient in the manufacture of methamphetamine, over the last four or five months.

4

Defendant told Sandusky that half of what he purchased was used to manufacture methamphetamine while the other half was used to treat his allergies. Sandusky said that as he and defendant were leaving the interview room, defendant stated it was not really him in the video since he had been in custody in Johnson County on the day the video was taken. A subsequent inquiry revealed defendant was released from custody on July 18, three days prior to the day on which the surveillance video was taken.

¶ 10 Ronald Hamson, owner of Hamson Ag, testified he had continuous problems with thieves. He contacted the sheriff's department on July 21 after he was advised by an employee that three caps were off the anhydrous ammonia tanks. The prosecutor showed Mr. Hamson Exhibit No. 2, the still photo, and Hamson said the individual depicted therein was not an employee, had never been an employee, and did not have permission to be on the property.

¶ 11 Officer Kevin Jackson of the Mt. Vernon police department narcotics division testified that his captain circulated a still image to the patrol division. Jackson stated the still image depicted defendant carrying a five-gallon bucket with a plastic tube attached to what appeared to be a soda bottle. He said he was unable to initially say who was depicted in the photo when he first saw it. While Jackson knew it resembled defendant, he was unable to positively identify the person to be the defendant until he viewed the entire video. On cross-examination, Jackson admitted he did not view the video until a week before trial.

¶ 12    In August 2011, Jackson showed the photograph to Jessica Joslin, who lives in Mt. Vernon. Joslin's husband, a methamphetamine addict, was arrested on meth charges in August 2011. Joslin testified that Jackson showed her a still image which she believed a picture of a person she knew by the name of "Jeremy." Joslin had never met "Jeremy," but saw "him sleeping on a porch one time." She identified defendant in court as the person in the photograph. On cross-examination, Joslin admitted that when she saw "Jeremy" she herself was high on methamphetamine and her husband was currently in jail with pending charges for various drug-related offenses.

¶ 13    Officer Brian Huff of the Mt. Vernon police department testified he viewed a still image, a black and white version of People's Exhibit 2, at the roll call table. Over defendant's objection, Huff testified he recognized the person in the image as defendant and identified him in the courtroom. Huff said he recognized defendant due to "previous dealings with him" through Huff's work as a police officer.

¶ 14    Defendant presented two alibi witnesses, Christina Miller and her niece, Shelly Myogate. Myogate and defendant are close friends. According to Miller, Myogate and defendant helped her remodel her house on the evening of July 20, 2011. Defendant spent the night at her house, and they went to a yard sale on the morning of July 21, 2011. Miller viewed the video, but could not tell if the person in it was defendant. Myogate also watched the video. She admitted that the person therein looked like defendant but said it could not be him because he was with her at the time the video was taken.

¶ 15　During deliberations, the jury requested a closer view of the video. Shortly after watching the video twice, the jury returned a guilty verdict on both counts. Ultimately, defendant was sentenced as an habitual criminal to 18 years on count I and 7 years on count II, with the sentences to run concurrently.

¶ 16　In our first review of this matter, we held that the testimony of the police officers and Joslin constituted improper lay opinion testimony because it did not aid the jurors' own identification of who was depicted in the video and the testimony encroached on the function of the jury to the extent we could not be confident in the verdict. *Thompson*, 2014 IL App (5th) 120079, ¶ 52, 21 N.E.3d 1. Additionally, we agreed with the State's confession that the two charges were based on the same physical act, but noted that we were confident such error would not occur on remand. *Id.* ¶ 63. Because we reversed, we did not address the issue raised again in this appeal. *Id.* ¶ 62.

¶ 17　Our supreme court granted the State's petition for leave to appeal. After providing us with some guidelines with regard to opinion testimony that relates to identification, the supreme court reversed, finding that any error in admitting the testimony as lay opinion testimony was harmless, and remanded for us "to consider any other issues" properly before us. *Thompson*, 2016 IL 118667, ¶ 73, 49 N.E.3d 393. The parties have filed supplemental briefs as requested by this court.

¶ 18　　　　　　　　　　　　ANALYSIS

¶ 19　The issue in this appeal is whether the trial court erred in failing to instruct the jury on an essential element of the crime. Defendant contends the trial court failed to instruct

the jury on "substantial step," an essential element of attempt, thereby removing a fact question from the jury and depriving him of his right to a fair trial. The State replies that because defendant did not request an instruction on substantial step, he forfeited this issue. The State further replies that while Illinois Supreme Court Rule 451(c) (eff. July 1, 2006) supplies limited relief from the forfeiture rule, defendant has failed to carry his burden of establishing either plain error or ineffective assistance of counsel. We agree with the State.

¶ 20                                      Plain Error

¶ 21    Whether the jury was properly instructed presents a question of law subject to *de novo* review. *People v. Dorn*, 378 Ill. App. 3d 693, 698, 883 N.E.2d 584, 587 (2008). Illinois Pattern Jury Instructions, Criminal, No. 6.05 (4th ed. 2000) defines attempt as follows: "A person commits the offense of attempt when he, [without lawful justification and] with the intent to commit the offense of ___, does any act which constitutes a substantial step toward the commission of the offense of ___." In the instant case, defense counsel did not ask that this instruction be given.

¶ 22    Generally, failure to ask for an instruction at trial and raise the issue in a posttrial motion results in the issue being forfeited. *People v. Anderson*, 325 Ill. App. 3d 624, 636, 759 N.E.2d 83, 93 (2001). However, where instructional errors are so grave that they affect the requirements of a fair and impartial trial, the plain error doctrine set forth in Supreme Court Rule 451(c) provides an exception to the forfeiture rule. That rule states that substantial defects in criminal jury instruction "are not waived by failure to make

8

timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. July 1, 2006). This rule is meant to correct grave or serious errors and errors in cases so factually close that fundamental fairness requires that the jury be properly instructed. *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

¶ 23    The rule is coextensive with the plain error clause of Supreme Court Rule 615(a), which states: " 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.' " *Id.* (quoting Ill. S. Ct. R. 615(a)). Accordingly, we consider defendant's argument pursuant to the plain error doctrine.

¶ 24    The plain error doctrine allows us to consider an unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.* The burden is on defendant to show the evidence was so closely balanced or the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 182, 830 N.E.2d 467, 476 (2005).

¶ 25    The erroneous omission of a jury instruction only rises to the level of plain error when its omission creates a serious risk that the jury incorrectly convicted the defendant

9

because the jurors did not understand the applicable law, so as to severely threaten the fairness of the trial. *People v. Hopp*, 209 Ill. 2d 1, 8, 805 N.E.2d 1190, 1194 (2004). "This standard is a difficult one to meet." *Sargent*, 239 Ill. 2d at 191, 940 N.E.2d at 1059. In *People v. Bell*, 2012 IL App (5th) 100276, 968 N.E.2d 1262, this court addressed the issue of whether, in a case of attempted possession of anhydrous ammonia, the trial court's failure to give the pattern jury instruction including "substantial step" in the definition of attempt rose to the level of plain error, and held that it did not.

¶ 26    Analysis of the issue begins with two preliminary questions: (1) what would a correct instruction have told the jury, and (2) what was the essential disputed issue in the case? *Id.* ¶ 33. Obviously, the correct instruction here, as in *Bell*, would have told the jury that a person commits the offense of attempt when he, with the intent to commit the underlying offense, performs any act which constitutes a substantial step toward the commission of the offense. Unlike *Bell*, where the disputed issue was whether the defendant was accountable for the actions of another in the planning or commission of attempted possession of anhydrous ammonia (*id.* ¶ 34), the essential disputed issue here is the identity of the suspect.

¶ 27    In the instant case, the surveillance video clearly shows someone carrying a bucket, soda bottle, and hose in between anhydrous ammonia tanks whose caps had been removed. Moreover, defendant admitted he tried to steal the anhydrous ammonia but stopped before completing the crime because he got "gassed out." The State is correct that the essential issue at trial did not even concern whether an attempt was made. Here,

10

there was overwhelming evidence of a "substantial step," much more than was present in *Bell.*

¶ 28 Defendant admits that his admission that he got "gassed out" is problematic for his case but argues that this cannot be used to show a substantial step toward attempt because he not only recanted, he also presented an alibi defense. However, our supreme court has already disagreed with our previous analysis and pointed out the overwhelming evidence against defendant, specifically stating:

"Defendant admitted he was the individual depicted in exhibit No. 2. In fact, defendant labeled it 'pretty cool,' asked for a copy, and even asked if it was going to be in the newspaper. Thereafter, defendant admitted to manufacturing methamphetamine for the previous four to five months and to having stolen anhydrous ammonia from Hamson Ag on four to five other occasions, which he used either to make methamphetamine or trade for cigarette money. Likewise, defendant admitted to purchasing pseudoephedrine over the previous four to five months, which he used in part for the manufacture of methamphetamine. Most important, perhaps, is the fact defendant told Sandusky how he was unsuccessful that day, describing how the hose he brought was too small and that he was 'gassed out' by the fumes from the anhydrous ammonia. These statements demonstrate defendant's familiarity with anhydrous ammonia and the production of methamphetamine.

We note that defendant does not challenge any of his statements as involuntary. Rather, his only challenge is based on his recantation at the end of the

interview. However, this recantation was unreliable because it differed from the alibi defense defendant offered at trial." *Thompson*, 2016 IL 118667, ¶¶ 68-69, 49 N.E.3d 393.

Because of the overwhelming evidence against defendant, we conclude that failure to instruct the jury concerning "substantial step" did not rise to the level of plain error.

¶ 29 The error caused by not giving a "substantial step" instruction is simply not so great nor is the case so factually close that the fundamental fairness of the trial is in question. There is no reasonable probability that the result would be different given the surveillance video, admission by defendant, subsequent recantation by defendant, and presentation of an alibi defense at trial. Because defendant has failed to show prejudice, we will not correct the forfeited error.

¶ 30                                    Ineffective Assistance

¶ 31 Defendant next asserts that counsel was ineffective for failing to request the attempt definitional instruction. We disagree.

¶ 32 In order to succeed on a claim of ineffective assistance of counsel, it must be shown that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). If no prejudice to the defendant is established, there is no need to separately determine whether counsel's performance was deficient. *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256 (1984).

¶ 33 As set forth above, there is ample evidence in the record that defendant took a substantial step toward the commission of the crime. The jury reviewed the surveillance tape once during trial and twice during deliberations, after which the jurors determined that defendant was the person in the video. Defendant was carrying a bucket, a two liter soda bottle, and a hose between anhydrous ammonia tanks. The caps that cover the valves on the tanks had been removed. Defendant admitted to the crime. While he later recanted, his recantation was unreliable because it differed from the alibi defense he presented at trial. Accordingly, defendant's claim of ineffective of counsel fails the prejudice prong of the *Strickland* test.

¶ 34 We also point out that a strong presumption exists that trial counsel's conduct fell within the wide range of reasonable professional assistance, and the challenged action or inaction was the product of sound trial strategy. *Strickland*, 466 U.S. at 689. Matters of trial strategy are generally immune from ineffective assistance claims unless counsel's strategy was so unsound that counsel completely failed to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441, 841 N.E.2d 889, 909 (2005). An attorney's decision as to what jury instructions to tender is one of several determinations widely considered matters of trial strategy and generally immune from ineffective assistance claims. *People v. Douglas*, 362 Ill. App. 3d 65, 75, 839 N.E.2d 1039, 1048 (2005).

¶ 35 In the instant case, defendant claimed he was not the person in the surveillance video. Two witnesses specifically testified defendant was with them at the time in question. During closing, defense counsel argued, "The ultimate question in this case is:

13

Who is in this video? Is it [defendant] or is it somebody else?" Considering defendant's recantation and the alibi defense presented at trial, we cannot say it was unsound trial strategy for defense counsel to forego a substantial step instruction. Defendant has failed to convince us that trial counsel was ineffective for failing to request the attempt definitional instruction.

¶ 36                                CONCLUSION

¶ 37    The State previously conceded that the two charges against defendant were based upon the same physical act; thus, only his conviction on count I should stand. See *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977). With regard to the remaining issue, we find the trial court did not commit reversible error in failing to instruct the jury on substantial step. Accordingly, we vacate defendant's conviction on count II, tampering with anhydrous ammonia equipment (720 ILCS 646/25(d)(2) (West 2010)), but affirm defendant's conviction and sentence on count I, attempt to procure anhydrous ammonia with intent to manufacture methamphetamine (720 ILCS 646/25(a)(2) (West 2010)).


¶ 38    Vacated in part; affirmed in part.

2017 IL App (5th) 120079-B

NO. 5-12-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Hamilton County. |
| | ) | |
| v. | ) | No. 11-CF-50 |
| | ) | |
| JEREMY R. THOMPSON, | ) | Honorable |
| | ) | David K. Frankland, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:**      May 4, 2017

---

**Justices:**      Honorable Richard P. Goldenhersh, J.

Honorable James R. Moore, P.J., and
Honorable Judy L. Cates, J.,
Concur

---

**Attorneys
for
Appellant**      Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
Defender, Lawrence J. O'Neill, Assistant Appellate Defender, Office of
the State Appellate Defender, Fifth Judicial District, 909 Water Tower
Circle, Mt. Vernon, IL 62864

---

**Attorneys
for
Appellee**      Hon. Justin Hood, State's Attorney, Hamilton County Courthouse,
100 South Jackson Street, McLeansboro, IL 62859; Patrick Delfino,
Director, David J. Robinson, Acting Deputy Director, Sharon
Shanahan, Staff Attorney, Office of the State's Attorneys Appellate
Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
Vernon, IL 62864