**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190152-U

Order filed March 17, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0152 Circuit No. 18-CF-83 |
| JARVIS D. LOGAN, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Defendant's convictions are affirmed, where the circuit court properly denied defendant's pretrial motion to suppress and properly instructed and/or admonished the prospective jurors. Further, defendant did not receive ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant was convicted of two counts of aggravated discharge of a firearm and one count of unlawful possession of a weapon by a felon. On appeal, defendant raises claims related to the denial of his pretrial motion to suppress, the instructions and/or admonishments given to the jurors, and ineffective assistance of counsel.

I. BACKGROUND

¶ 4       On February 27, 2018, the State charged defendant by indictment with two counts of aggravated discharge of a firearm pursuant to section 24-1.2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(2) (West 2018)) (counts 1 and 2) and one count of unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)) (count 3). The charges arose following a January 28, 2018, incident, wherein officers responded to the 1800 block of Indiana Avenue in Peoria, Illinois, due to a ShotSpotter[1] alert of approximately 13 shots fired. On the day of the incident, 15-year-old Breyon Toles, an eyewitness to the shooting, indicated to an officer that "Sammie's dad" was one of the shooters.

¶ 5       On September 6, 2018, the State tendered discovery of an investigative report authored by State's Attorney investigator Michael Hirsch. The report concerned the September 4, 2018, pretrial interview of Toles, which occurred at Limestone High School. The report indicated that:

> "[d]uring the pre-trial meeting with Toles ASA Warner presented the attached picture of [defendant] to Toles. At that time we asked [Toles] if that was Sammie's Dad. Toles said that is not Sammie's Dad but that was one of the shooter [*sic*] on the day he witnessed the shooting in the east bluff. [Toles] stated there was [*sic*] two shooters and this picture was one of the individuals who was shooting."

¶ 6       On September 7, 2018, defendant filed a motion to suppress Toles's out-of-court identification of defendant. Defendant argued the presentation of a single picture of defendant to Toles was suggestive, tainting the identification process, such that the identification was unreliable and improper.

---

[1]ShotSpotter is a system of sensors that detects and triangulates the position of gunshots throughout the City of Peoria.

¶ 7        On November 1, 2018, the circuit court conducted a hearing on defendant's motion to suppress. At the hearing, Hirsch testified that in his capacity as an investigator for the Peoria County State's Attorney's Office, he, along with Assistant State's Attorney Matt Warner (prosecutor), met with Toles at Limestone High School in early September 2018. Hirsch and the prosecutor hoped to find out from Toles whether Sammie's dad was the shooter. Hirsch, the prosecutor, Toles, and the school principal, Mr. Robinson, were present during the interview. Hirsch testified that the prosecutor placed a photograph of defendant in front of Toles and asked if the individual depicted was Sammie's dad. On cross-examination by the State, Hirsch testified that Toles responded to the prosecutor's inquiry by stating, "[n]o, but that was one of the shooters." The circuit court denied defendant's motion to suppress by determining that what occurred at the high school was a pretrial interview, rather than an impermissible showup as defense counsel suggested. The court found that the prosecutor was merely doing some pretrial detective work, "cleaning up his case."

¶ 8        Prior to trial, the parties stipulated that defendant had a prior felony conviction in Peoria County case No. 13-CF-22, a condition precedent to the UPWF charge. The parties agreed that the jury would not hear the specifics of defendant's prior felony conviction or that the felony was forcible in nature. Additionally, defense counsel renewed his objection to Toles's pretrial identification of defendant.

¶ 9        Defendant's jury trial began on January 8, 2019. During *voir dire*, the court instructed a group of 12 prospective jurors pursuant to Illinois Supreme Court Rule 431(b) as follows:

            "THE COURT: Okay. The law requires that I ask and get an individual response
            for four questions that I package into one question, so I will read that to you, and then I

3

will go down the list that I just went down and asked you your name that do you accept and understand this principle.

And the question is this, Do each of you accept and understand the following four principles:

One, a Defendant is not required to offer any evidence in his own behalf;

Two, a Defendant cannot be convicted of a charge unless proven guilty beyond a reasonable doubt;

Three, a Defendant that chooses to not testify is not to have that used against him in any way;

And, four, a Defendant is presumed to be innocent of the charges against him.

Because I'm required to have an individual response, do you accept and understand those four principles, Ms. Ma?" Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 10    Following the court's inquiry, all twelve prospective jurors individually responded, "I accept." Ten of the twelve prospective jurors were selected to serve on the jury.

¶ 11    During the evidentiary portion of the trial, City of Peoria police officer Karly Glore testified that on January 28, 2018, at approximately 12:40 p.m., Glore received a ShotSpotter alert, indicating that 13 rounds had been fired near the 1800 block of Indiana Avenue. Glore responded to the location and discovered shell casings in between two homes located at 701 and 705 East Behrends Avenue.

¶ 12    City of Peoria police officer Paul Tuttle testified that he was dispatched to the intersection of Nebraska Avenue and Maryland Avenue on January 28, 2018, to take photographs of a damaged gray Jeep. Afterward, Tuttle responded to 701 East Behrends Avenue,

4

where he photographed 13 shell casings.[2] The shell casings came from two different caliber firearms.

¶ 13        Demarco Brown testified that on January 28, 2018, at approximately 12:40 p.m., he was driving his gray Jeep Patriot on Glen Oak Avenue. Brown turned onto Indiana Avenue, and as he looked to his right, he saw defendant riding a bicycle up Behrends Avenue, toward Brown's vehicle. Brown was previously acquainted with defendant through a cousin. Brown stopped at the stop sign at the corner of Indiana Avenue and Nebraska Avenue. At this time, Brown turned around and saw defendant, now off his bicycle, standing in front of a brown porch attached to the back of a house. Defendant began firing gunshots toward Brown and/or Brown's vehicle. Brown could not see if another shooter was with defendant. Brown ducked down to make sure he wasn't hit. Then, he proceeded to his aunt's house and called the police.[3] On the same day, Brown identified defendant in a photo lineup as the person who fired the shots at him.[4]

¶ 14        On cross-examination, Brown indicated that he viewed defendant, along with "a lot of people on the porch that I seen when I rolled by." Brown viewed defendant out of the passenger window of his vehicle while traveling at approximately 25 miles per hour. Brown's vehicle had tinted windows. Brown testified that he was at the stop sign when he looked back and viewed defendant shooting. Brown denied telling officers on the day of the shooting that he viewed

---

[2]People's exhibit Nos. 4-20, which generally depicted the scene and the location of the 13 shell casings that were recovered, were admitted into evidence and published without objection. People's exhibit No. 21, the shell casings, was also admitted into evidence.

[3]People's exhibit Nos. 1-3, which depicted bullet holes and/or damage to Brown's vehicle, were admitted into evidence without objection.

[4]City of Peoria detective Andrew Smith testified that he presented a photo lineup to Brown on January 28, 2018. The administration of the photo lineup, wherein Brown identified defendant as the shooter, was both audio and video recorded. People's exhibit Nos. 22-24, representing the Peoria Police Department lineup and photo spread advisory form, the photo lineup shown to Brown, and the video recording of the administration of the photo lineup, were admitted into evidence and published to the jury without objection.

defendant out of the side view mirror, rather than out of the passenger window. Brown stated that defendant was wearing a black Nike hat, a black hoodie with a tie-dye design on the front, a pair of jeans, and a pair of white Air Force 1 shoes.

¶ 15    Breyon Toles, then 16 years old, testified he lived on the corner of Behrends Avenue and Indiana Avenue on the date in question. At the time of the shooting, Toles was outside playing basketball with his little brother. Toles testified that two males pulled up on bicycles and began shooting at a gray car. The males were firing shots toward Nebraska Avenue. When the shooting began, Toles grabbed his little brother and ran into the house.

¶ 16    Toles identified defendant as one of the shooters. Toles did not know defendant before the shooting. Toles did not know the other shooter by name, but recognized him as the father of a boy, Sammie, that his little brother played with. Toles testified that Sammie's dad lived on Behrends Avenue and that his little brother would sometimes go to the home to play with Sammie. Toles identified the house where Sammie's dad resided.[5]

¶ 17    On cross-examination, Toles testified that he was playing basketball on the side of his house that faced Behrends Avenue. Toles viewed two men riding bicycles toward him up Behrends Avenue. The men jumped off their bikes in between two houses and began shooting toward a gray car. Toles stated that the gray car did not come down Indiana Avenue but was instead traveling through an unspecified alley. Toles testified that defendant was wearing a blue jacket that was not multicolored or tie-dyed. Sammie's dad wore a black or brown jacket. Toles stated that members of the State's Attorney's Office came to his school in July or August 2018, and showed him two pictures. The pictures depicted two black males. Toles stated that he was

_____

[5]People's exhibit No. 25, a photograph of the home where Sammie and his father stayed, was admitted into evidence.

6

asked whether the persons depicted in the pictures looked familiar, not whether the pictures depicted Sammie's dad.

¶ 18    City of Peoria police officer Brock Lavin testified that he located defendant at a residence on 713 East Behrends Avenue on February 6, 2018. Lavin identified People's exhibit No. 25, the home where Sammie's dad was alleged to have lived, as the residence where he arrested defendant. Lavin knew that defendant's brother also lived at the residence. At the conclusion of the State's case, the parties stipulated that on January 28, 2018, defendant was convicted of a felony in Illinois.

¶ 19    Two witnesses were presented on behalf of the defense. First, City of Peoria police officer Clinton Rezac testified that he interviewed the victim, Demarco Brown, on the day of the shooting. At that time, Brown indicated that he viewed the shooter from the mirror affixed to the front passenger door. Second, State's Attorney investigator Michael Hirsch gave testimony that was substantially similar to that offered during the pretrial suppression hearing regarding Toles's pretrial interview.

¶ 20    Five hours into deliberations, the jury sent a note stating: "[y]our Honor, we, the jury, cannot reach a unanimous decision at this time." Based on this note, defense counsel recommended that the court give a *Prim* instruction, and the State agreed. See *People v. Prim*, 53 Ill. 2d 62 (1972). The jury returned to the courtroom, where the court stated as follows: "[f]olks, I'm going to read you an added instruction that I'd like you to consider, and I'll send you back to deliberate until 5:00, and we'll see how it goes then." The court recited Illinois Pattern Jury Instruction No. 26.07, the deadlocked jury supplemental instruction, otherwise known as a *Prim* instruction, to the jury. Illinois Pattern Jury Instructions, Criminal, No. 26.07 (approved December 8, 2011) (hereinafter IPI Criminal No. 26.07). The court added, "[s]o I'm encouraging

you to reach a verdict, and I'll send you back, and we'll see you back at 5:00. If you don't have something by then, we'll move on to a different path and be back tomorrow."

¶ 21 Shortly thereafter, the jury returned guilty verdicts on all three counts.[6] On February 13, 2019, defendant filed a motion for a new trial, arguing, in part, that the court erred by not suppressing the "improperly suggestive identification" by Toles. During defendant's sentencing hearing, the circuit court denied defendant's motion for a new trial. The court sentenced defendant to concurrent terms of 8 years' imprisonment on counts 1 and 2 and a concurrent 11-year term on count 3. Defendant appeals.

¶ 22                                   II. ANALYSIS

¶ 23                   A. Motion to Suppress Identification Testimony

¶ 24 Defendant opens his appeal by arguing that Toles's pretrial identification and in-court identification of defendant should not have been admitted at trial, where the identification "was obtained through suggestive identification procedures." For this reason, defendant asserts that the circuit court erred in denying his pretrial motion to suppress. The State asserts that Toles's identification constituted reliable, admissible, evidence at trial, where the identification was supported by his own independent recollection.

¶ 25 The circuit court's ruling on a motion to suppress is subject to a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). The circuit court's factual findings will not be reversed unless they are against the manifest weight of the evidence, however, we review *de novo* the court's ultimate legal ruling on whether suppression is warranted. *Id*.

¶ 26 We recognize that in some cases, the pretrial identification procedure utilized by law enforcement may be so improperly suggestive that it creates a substantial likelihood of

---

[6]The exact timing of the jury verdict following the *Prim* instruction is unknown.

8

misidentification, resulting in a denial of due process. *People v. Blumenshine*, 42 Ill. 2d 508, 511-13 (1969); see *People v. McTush*, 81 Ill. 2d 513 (1980); *Perry v. New Hampshire*, 132 S. Ct. 716, 724-25 (2012). It is defendant's burden to establish the pretrial identification was impermissibly suggestive. However, even if accomplished, the State may overcome this obstacle through clear and convincing evidence that the witness identified defendant solely on the basis of his memory of the crime. *McTush*, 81 Ill. 2d at 520; *People v. Enis*, 163 Ill. 2d 367, 398 (1994). When determining whether the pretrial identification procedure was impermissibly suggestive, reviewing courts look to the totality of the circumstances, and may consider both the evidence presented at the suppression hearing and at trial. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 95.

¶ 27        Both during the hearing on the motion to suppress and at trial, Hirsch provided that during the pretrial interview at the high school, the prosecutor placed a single photograph of defendant in front of Toles. The prosecutor asked if the individual depicted was Sammie's dad. Toles responded, "[n]o, but that was one of the shooters." Toles testified at trial that members of the State's Attorney's Office showed him two separate pictures during this pretrial interview. Toles further testified that he was asked whether the persons depicted looked familiar, not whether the pictures depicted Sammie's dad.

¶ 28        Under either set of facts, we, like the circuit court, are skeptical that anything resembling a formal identification procedure took place during Toles's pretrial interview. The circuit court factually determined that it did not appear the prosecutor had conducted anything resembling a formal showup. Instead, the court found the prosecutor was merely "cleaning up his case." We agree. Based on these facts, it does not appear the prosecutor intended to conduct anything resembling a formal law enforcement showup. Prior to the interview, the prosecutor was

9

apparently unaware of the existence of a second shooter and mistakenly thought that defendant was the individual Toles had previously described on the afternoon of the shooting as Sammie's dad. As such, the prosecutor appears to have inadvertently stumbled into Toles's identification of defendant. Ultimately, we cannot say the court's determination that no showup occurred was against the manifest weight of the evidence. However, even if we were to hold that this prosecutor possessed some nefarious intent regarding this identification, Toles's identification testimony was independently reliable and consequently admissible against defendant at trial. See *Enis*, 163 Ill. 2d at 398.

¶ 29    In determining whether an identification has an independent origin, courts may consider: "(1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the offender; (4) the level of certainty demonstrated by the witness at the suggestive confrontation; and (5) the length of time between the offense and the suggestive confrontation." *People v. Brooks*, 187 Ill. 2d 91, 129-30 (1999); see Illinois Pattern Jury Instructions, Criminal, No. 3.15 (approved July 18, 2014) (hereinafter IPI Criminal No. 3.15). Here, Toles viewed defendant, whom he had never met before, and Sammie's dad, with whom Toles was previously acquainted, riding their bicycles up Behrends Avenue. Toles witnessed these two individuals fire shots at a gray car. The exhibits contained in this record appear to document that Toles's yard was directly across the street from where the shooting occurred. It was broad daylight, and the defendants were not wearing masks. Toles described what the shooters wore in detail. Toles did not hesitate to identify defendant as the shooter at trial or during his pretrial interview. Ultimately, Toles described the shooting without hesitation and exhibited a strong command of the events that transpired. Moreover,

10

Toles's identification of defendant as one of the shooters was independently corroborated by Brown.

¶ 30 Thus, we find sufficient circumstances existed to conclude that the identification testimony provided by Toles was independently reliable and was consequently admissible against defendant at trial. We affirm the denial of defendant's motion to suppress.

¶ 31 B. Failure to Instruct the Jury Pursuant to IPI Criminal No 3.15

¶ 32 Defendant argues he is entitled to a new trial because the circuit court erroneously failed to instruct the jury pursuant to IPI Criminal No. 3.15, where the State's case turned solely on the identification testimony of two eyewitnesses. Defendant acknowledges that his failure to raise this jury instruction issue in the circuit court results in forfeiture of the issue on appeal but argues he has met his burden of establishing plain error.

¶ 33 Our supreme court instructs that a criminal defendant generally forfeits review of any putative jury instruction error by failing to object, offer an alternative instruction, or raise the matter in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). However, substantial defects in jury instructions in criminal cases are not waived, where grave error exists in cases so factually close that considerations of fundamental fairness require that the jury be properly instructed. See Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013); *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007) (providing that Rule 451(c) is coextensive with the plain error clause of Illinois Supreme Court Rule 615(a)).

¶ 34 The plain error doctrine allows reviewing courts to consider unpreserved errors, where "(1) a clear or obvious error occured [*sic*] and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occured [*sic*] and that error is so serious that it affected

11

the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id*. at 565. Accordingly, we turn to the above-mentioned test to determine whether the court committed clear or obvious error by failing to instruct the jury pursuant to IPI Criminal No. 3.15.

¶ 35    IPI Criminal No. 3.15 expressly draws the jury's attention to the five factors it must potentially consider when weighing the identification testimony of a witness, including the opportunity the witness had to view the offender at the time of the offense, the witness's degree of attention, the witness's earlier description of the offender, the witness's level of certainty, and the length of time between the offense and the identification.

¶ 36    The Committee Note that accompanies IPI Criminal No. 3.15 states that the court should "[g]ive this instruction when identification is an issue" and further instructs that "[t]he jury should be instructed on only the factors with any support in the evidence." Based on this Committee Note, defendant asserts that the court was required to instruct the jury pursuant to IPI Criminal No. 3.15. We disagree.

¶ 37    Generally, the circuit court is under no obligation to give jury instructions not requested by the parties. *People v. Alexander*, 408 Ill. App. 3d 994, 1001 (2011). For instance, in *People v. Lewis*, 165 Ill. 2d 305, 354-55 (1995), our supreme court rejected the defendant's assertion that the circuit court was required to instruct the jury on the factors enumerated in IPI Criminal No. 3.15.[7] The *Lewis* court analyzed the language of Illinois Supreme Court Rule 451(a), which provides that:

---

[7]We note that the Committee Note stating, "[g]ive this instruction when identification is an issue," was added to IPI Criminal No. 3.15 in July 2017.

"[w]henever Illinois Pattern Jury Instructions, Criminal contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013).

The *Lewis* court held that the language of Rule 451(a) does not mandate giving an instruction merely because one exists on defendant's theory of the case. *Lewis*, 165 Ill. 2d at 355. Rather, "whether to give an instruction remains a matter for the court's determination." *Id.*

¶ 38    Furthermore, as discussed above, it is the party's burden to present a specific jury instruction to the court. *People v. Wright*, 2017 IL 119561, ¶ 88 (citing *People v. Turner*, 128 Ill. 2d 540, 562 (1989)). The erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law. *People v. Sargent*, 239 Ill. 2d 166, 191 (2010); *People v. Hopp*, 209 Ill. 2d 1, 12 (2004). As such, our supreme court instructs that to ensure a fair trial, courts are generally only required to *sua sponte* offer instructions related to the elements of the crime charged, the presumption of innocence, and the burden of proof. *Wright*, 2017 IL 119561, ¶ 88.

¶ 39    Here, there is no question that the jury was instructed on the elements of the crime charged, defendant's presumption of innocence, and the State's burden of proof. It is further uncontested that the jury was instructed pursuant to Illinois Pattern Jury Instructions, Criminal No. 1.02 (approved December 8, 2011) (hereinafter IPI Criminal No. 1.02), that:

"[o]nly you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness,

13

you may take into account his ability and opportunity to observe, [his age,] his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

¶ 40   As such, the court provided the jury with similar principles regarding the jury's role in assessing the witnesses' credibility, along with various criteria that they may consider when making this assessment. Therefore, because the court was under no obligation to give an instruction not tendered by the parties, and because instructions were given on the credibility of witnesses in general, the presumption of innocence, and the applicable burden of proof, defendant received a fair trial. See *People v. Kubat*, 94 Ill. 2d 437, 475 (1983). Thus, we hold that defendant fails to establish plain error where no error occurred.

¶ 41   Defendant also alleges trial counsel rendered deficient performance when he failed to tender IPI Criminal No. 3.15 for the court's consideration. To demonstrate ineffective assistance of counsel on appeal, a defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Manning*, 241 Ill. 2d 319, 326 (2011); *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

¶ 42   Here, defendant cannot make the requisite showing that there is a reasonable probability that the result of the proceeding would have been different had the jury been instructed pursuant to IPI Criminal No. 3.15. Again, viewing this record in totality, it is clear this jury was not deprived of any essential guidance. See *People v. Parks*, 65 Ill. 2d 132, 138 (1976). The jury was instructed concerning its role in assessing the witnesses' credibility and the various criteria that they may consider when making this assessment. Accordingly, we cannot say the jury would

14

likely have returned not guilty verdicts simply because the jury received additional instructions concerning weighing witness testimony.

¶ 43                    C. Alleged Coercion Pertaining to the Jury Verdict

¶ 44        Next, defendant alleges the circuit court's response to a question posed by the jury during deliberations was coercive, resulting in prejudice to defendant. Here, the record reflects that approximately five hours into deliberation, the jury sent out a note stating, "[y]our Honor, we, the jury, cannot reach a unanimous decision at this time." Based on this note, defense counsel recommended that the court give a *Prim* instruction, and the State agreed. See *Prim* 53 Ill. 2d 62. When the jury returned to the courtroom, and the court stated, "[f]olks, I'm going to read you an added instruction that I'd like you to consider, and I'll send you back to deliberate until 5:00, and we'll see how it goes then." The court then recited IPI Criminal No. 26.07, the deadlocked jury supplemental instruction, otherwise known as a *Prim* instruction. After properly reciting the instruction, the court added, "[s]o I'm encouraging you to reach a verdict, and I'll send you back, and we'll see you back at 5:00. If you don't have something by then, we'll move on to a different path and be back tomorrow."

¶ 45        To narrow the issue on appeal, defendant concedes the jury was properly advised pursuant to IPI Criminal No. 26.07. Defendant instead takes issue with the fact that the court allegedly encouraged the jury to reach a verdict following the instruction. Defendant acknowledges his forfeiture of the issue, owing to his failure to object at trial, and requests plain error review. The State argues no clear or obvious error occurred here, where under the totality of the circumstances, the court's comment was not coercive.

¶ 46        Turning to the relevant caselaw, "the trial court has broad discretion when responding to a jury that claims to be deadlocked, although any response should be clear, simple, and not

15

coercive." *People v. McLaurin*, 235 Ill. 2d 478, 491 (2009). A trial court's comments are considered coercive if the comments convey to the jurors that they must arrive at a verdict and do not leave open the option of returning no verdict if they are unable to reach a consensus. *People v. Wilcox,* 407 Ill. App. 3d 151, 164-65 (2010). In *Prim*, our supreme court addressed the issue of what, if anything, a trial judge should do when a jury indicates that it may be deadlocked and unable to reach a verdict. *Prim*, 53 Ill. 2d at 74. Citing concerns that those voting in the minority could conceivably feel a coercive influence when seeking guidance from the court, the *Prim* court developed a model instruction with the purpose of mitigating these coercive effects. *Id*. at 75-76. When reviewing the propriety of the court's statements to the jury, the test is whether, under the totality of the circumstances, the court's language coerced or interfered with the deliberations of the jury to defendant's detriment. *Wilcox*, 407 Ill. App. 3d at 163; *People v. Foster*, 394 Ill. App. 3d 163, 166-67 (2009); see *People v. Gregory*, 184 Ill. App. 3d 676, 682 (1989).

¶ 47        Viewing the totality of the circumstances in the instant case, the court did not convey to the jury that they must arrive at a verdict for several reasons. First, the court's comment immediately followed a recitation of the *Prim* instruction, which properly advised the jury on how to deliberate and included that the jurors need not "surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." As such, the jury was explicitly instructed that they were not to change their opinions for the sole purpose of returning a verdict. Second, though the court stated it was encouraging the jury to reach a verdict, the court left open the possibility that if the jury did not reach a verdict by the end of the day, "we'll move on to a different path and be back tomorrow." This comment cannot reasonably be interpreted as leaving the jury with no other

16

option but to return a verdict by the end of the day. For these reasons, the record affirmatively rebuts defendant's contention that this jury believed that being deadlocked was not an option. We hold that the court's comments did not rise to the level of clear or obvious error here. Where no error occurred, defendant fails to establish plain error.

¶ 48                                 D. Rule 431(b)/*Zehr* Admonishments

¶ 49        Defendant argues the circuit court erred in admonishing the venire panel of prospective jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) where, by grouping the four principles into a singular statement of law, the court failed to ensure the potential jurors understood and accepted the principles enumerated in the rule. Defendant concedes that the circuit court advised the jury as to all four required principles and asked whether the jurors accepted and understood the principles. However, defendant alleges error arose where the prospective jurors answered the court's inquiry by individually answering, "I agree," without indicating their understanding.

¶ 50        Defendant again acknowledges his forfeiture of the issue and asks this court to review his claim under plain error. Defendant further acknowledges that at the time of the filing of his brief, our supreme court had yet to issue its decision in *People v. Birge*, 2021 IL 125644, where the propriety of a circuit court's reading of the four Rule 431(b) principles into a combined statement was at issue. The State contends that the *Birge* holding serves to extinguish defendant's argument in the instant appeal. Our review of whether the circuit court committed clear and obvious error is *de novo*. *Id.* ¶ 24.

¶ 51        Rule 431(b) states as follows:

            "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed

17

innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."

¶ 52 Our supreme court recently clarified in *Birge* that a difference exits, for purposes of error, between the procedure utilized to convey the Rule 431(b) principles and a court's omission of a principle and/or failure to ask if the prospective jurors understood and accepted all four principles. *Birge*, 2021 IL 125644, ¶ 36. The *Birge* court rejected the notion that the circuit court's grouping of the Rule 431(b) principles in that case served to undermine the purpose of the rule or resulted in juror confusion. *Id.* ¶ 40. In so holding, our supreme court provided cogent guidance concerning the plain language and purpose of the rule. See *Id.* ¶¶ 25-41.

¶ 53 The *Birge* court pointed out that the plain language of the rule does not require the court to explain the relevant principles in any particular fashion. *Id.* ¶ 34. Instead, Rule 431(b) mandates a specific question and response process, wherein the court is required to ask each potential juror whether he or she understands and accepts each of the principles in the rule. *Id.* ¶ 33; *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). Under the plain language of the rule, "a court complies with Rule 431(b) if it (1) instructs the prospective jurors on the four principles, (2) asks if the prospective jurors understand those principles, and (3) asks if the prospective jurors accept those principles." *Birge*, 2021 IL 125644, ¶ 34. Thus, we reject defendant's

18

argument that the circuit court was required to recite the relevant principles separately to the prospective jurors as defendant suggests.

¶ 54        We further reject defendant's contention that the prospective jurors' responses to the circuit court's inquiries evinced their confusion. In *Birge*, the court held that the prospective jurors expressed their understanding and acceptance of the principles through a show of hands. *Id.* ¶ 41. The *Birge* court instructed that this show of hands was more than adequate to convey the jurors' acceptance and understanding, where, among other things, the principles comprising Rule 431(b) "are familiar to the average layperson and relatively easy to understand." *Id.* ¶ 40. Here, we fail to see how a show of hands constitutes a stronger showing of juror understanding than the 12, separate, individual responses of "I accept" in the instant case. We are not inclined to believe, as defendant insinuates, that 12 jurors, in a row, failed to understand the four principles. If this were the case, it would certainly have been reasonable for at least one of the jurors, or the parties, to have alerted the court to the alleged confusion it had caused. Instead, it is far more likely that following the response of the first juror, the jurors that followed, as is often the case during *voir dire*, simply fell in line.

¶ 55        Like the circuit court in *Birge*, the court here neither omitted any of the four Rule 431(b) principles, nor failed to ask whether the prospective jurors understood and accepted the principles. The court did not inject unnecessary language into its recitation of the principles and did not ask general questions about whether these jurors were willing to follow the law. Simply put, this court complied with the plain language of the rule. Further, the record does not reflect that the jurors did not understand the Rule 431(b) principles. Therefore, defendant fails to establish plain error, where we find no clear and obvious error occurred regarding Rule 431(b).

19

¶ 56                     E. Ineffective Assistance/Failure to Sever UPWF Count

¶ 57        Lastly, defendant alleges trial counsel rendered ineffective assistance when he failed to move to sever the UPWF count from the other charges. Defendant asserts that the admission of his prior conviction, as necessary to prove the UPWF count, unfairly portrayed defendant as a bad person with the propensity to commit criminal acts. Defendant further argues that no legitimate trial strategy existed to justify counsel's failure to move to sever the charges. The State contends counsel's decision not to move for a severance constituted reasonable trial strategy.

¶ 58        To lodge a successful ineffective assistance of counsel claim, a criminal defendant must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). A defense decision not to seek a severance of charges is generally regarded as a matter of trial strategy. *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 24; *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10; *People v. Gapski*, 283 Ill. App. 3d 937, 942 (1996). One major disadvantage of severing two charges is that it gives the State two bites at the proverbial apple. *Poole*, 2012 IL App (4th) 101017, ¶ 10. That is, "[a]n evidentiary deficiency in the first case can perhaps be cured in the second." *Id*. Thus, defense counsel may choose to pursue an all-or-nothing strategy and seek acquittal on all charges during a single proceeding. *Fields*, 2017 IL App (1st) 110311-B, ¶ 28. However, this court has recently held that counsel may be ineffective for failing to seek a severance where no strategic reason to adopt an all-or-nothing approach exists. *People v. Howard*, 2021 IL App (3d) 180441-U, ¶ 29.

¶ 59        We distinguish the instant case from this court's recent decision in *Howard*. Our court, in *Howard*, rejected the argument that it was sound strategy to fail to seek a severance of the defendant's prior felony conviction in an effort to expose the defendant to a single trial. *Id*. Our

20

court based its holding on the fact that the defendant admitted to shooting the victim prior to trial. *Id.* Thus, the defendant "had no hope of being found not guilty of [UPWF]," where the question of defendant's possession of a weapon was uncontested. *Id.*

¶ 60 Here, defendant's possession of a weapon, constituting the basis of the UPWF charge, remained contested throughout the entirety of the proceedings. Defendant made no admissions to law enforcement prior to trial regarding his possession or usage of a firearm. In fact, the firearm defendant allegedly used was never found, and no physical evidence, such as defendant's fingerprints, were located on the shell casings discovered at the scene. Instead, the entirety of the State's case rested on the eyewitness testimony of Brown and Toles. For obvious reasons, defense counsel argued at trial that the eyewitnesses misidentified defendant. Under these circumstances, defense counsel could have reasonably believed the odds of obtaining an acquittal on all charges were greater in one proceeding, rather than two. That is, having two separate trials could have potentially given the State the opportunity to clean up discrepancies in the eyewitnesses' testimony. The fact that counsel's strategy ultimately proved unfruitful does not mean counsel performed unreasonably.

¶ 61 Furthermore, we would be remiss if we failed to note that defense counsel ensured this jury did not hear the specifics of defendant's prior felony offense or that the offense was forceful in nature. For these reasons, we conclude that defendant did not receive ineffective assistance of counsel. Defendant's convictions are affirmed.

¶ 62 III. CONCLUSION

¶ 63 The judgment of the circuit court of Peoria County is affirmed.

¶ 64 Affirmed.